Steven Laron McARTHUR *v.* STATE of Arkansas

CR 91-206                                        830 S.W.2d 842

Supreme Court of Arkansas
Opinion delivered April 20, 1992

*Robert Adcock*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Steven Laron McArthur was convicted of capital felony murder and sentenced to life imprisonment without possibility of parole. On appeal, he raises four points for reversal, none of which have merit. As one of

appellant's arguments challenges the sufficiency of the evidence, we address that challenge first. *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984).

On January 21, 1990, a hunter discovered the body of sixteen-year-old Rodney Spence laying facedown in a ditch in north Lonoke County. Spence had been shot twice in the head at close range. Mike Spence, the victim's father, testified that on the afternoon of January 20, 1990, Rodney had left his parents' home in Austin to pick up James McMurty, Spence's fifteen-year-old cousin, and go to town, with the understanding that Rodney would be home by 10:00 p.m. that night. Rodney was driving a 1986 red Ford Ranger. Harold McMurty, the victim's uncle, testified that Rodney arrived at his house at approximately 6:45 p.m. whereupon McMurty informed Rodney that James had gone with his mother to Knight's grocery in Cabot. Rodney told McMurty that he would try to catch up with James in Cabot. When Rodney Spence did not return home by 10:30 that evening, his parents became worried and reported Rodney missing at approximately 12:30 a.m. Rodney Spence's body was discovered the next day.

On January 23, 1990, a patrolman with the Plano Texas Police Department pulled over a red Ford Ranger with Arkansas plates, after hearing a national broadcast to be on the lookout for the vehicle. Donald Hawley, the driver of the truck, informed the Texas authorities that he and appellant Laron McArthur had been in Cabot, Arkansas, the past weekend and stayed at McArthur's girlfriend's apartment. Hawley stated that McArthur had left the apartment for a while on Saturday, and when McArthur returned he was driving the red truck which Hawley and McArthur drove to Dallas, Texas. According to Hawley, a pistol was located in McArthur's sister's apartment in Dallas.

The Plano police obtained and executed a search warrant for Robin McArthur's apartment, where they found a gun in a nightstand drawer. At trial, the parties stipulated that the gun found in the nightstand drawer was the same weapon that was used to shoot Rodney Spence. Robin McArthur informed the police that her brother was at the Deluxe Inn in Dallas, and the Dallas Police Department took custody of McArthur that night.

Donald Hawley eventually pled guilty to capital murder,

and testified at appellant's trial. Hawley testified that McArthur had approached Rodney Spence in the parking lot of Knight's grocery store in Cabot. According to Hawley, he and McArthur arranged for Spence to give them a ride to a liquor store and that Spence drove them to two liquor stores and a convenience store. When Spence went inside the convenience store, McArthur informed Hawley that he was going to get Spence to take them to a friend's house and McArthur instructed Hawley to act sick when McArthur prompted him.

Hawley testified that a plan developed for stealing Spence's truck while Spence was driving from the convenience store. McArthur directed Rodney to a remote location whereupon McArthur stated that Hawley "looked sick." McArthur and Hawley got out of the truck on the passenger side and crouched by the truck. Spence also got out of the truck and McArthur asked Spence for assistance in getting Hawley back in the truck. Hawley then stepped around the rear of the truck, aimed a gun at Spence, and instructed Spence to lie on the ground and empty his pockets. Hawley testified that McArthur said "Well, shoot him," and Hawley shot Spence in the head.

The two men had proceeded to drag Spence's body when McArthur dropped the upper half of Spence's body and stated that Spence was still alive. According to Hawley, McArthur stated that he didn't want to see Spence suffer and fired a second shot into Spence's head. Hawley and McArthur left Spence's body in the ditch where it was eventually discovered. After killing Spence, Hawley and McArthur took Spence's truck and left for Dallas where they stayed in McArthur's sister's apartment.

■ Appellant argues that the trial court should have directed a verdict in his favor because none of the state's witnesses ever placed the appellant at the scene of the crime with a weapon in his hand. A challenge to the denial of a directed verdict is a challenge to the sufficiency of the evidence. *Owens* v. *State*, 300 Ark. 73, 777 S.W.2d 205 (1991). We do not address appellant's argument because the record reflects that appellant waived his right to challenge the sufficiency of the evidence by failing to make a motion for directed verdict at the close of the case. A.R.Cr.P. Rule 36.21(b) requires a defendant to move for a directed verdict at the close of the state's evidence and at the close

of the case if he wishes to preserve this challenge. We adhere to our strict interpretation of the requirements of Rule 36.21(b), *Easter* v. *State*, 306 Ark. 452, 815 S.W.2d 924 (1991), and do not consider appellant's challenge to the sufficiency of the evidence.

Appellant's second argument for reversal is that the trial court erred in not allowing defense counsel to impeach Donald Hawley with prior statements made by Hawley. Specifically, appellant challenges the exclusion of Hawley's prior statement to the sheriff of Lonoke County, and the exclusion of a deposition given by a doctor who evaluated Hawley.

The transcript reveals that the trial court never actually ruled on whether defense counsel could impeach Hawley with Hawley's statement to the sheriff of Lonoke County. The issue arose when defense counsel questioned Hawley about Hawley's prior statement to the sheriff in which Hawley spoke of horseback riding and shooting a pistol. The state objected on grounds of relevancy and the fact that Hawley had not given testimony inconsistent with that portion of his statement to the sheriff. Defense counsel rephrased his question and proceeded without renewing his objection or requesting further clarification. As we have held that the failure to obtain a ruling precludes review of the issue on appeal, *Terry* v. *State*, 309 Ark. 64, 826 S.W.2d 817 (1992), *Pacee* v. *State*, 306 Ark. 563, 816 S.W.2d 856 (1991), *Shaw* v. *State*, 299 Ark. 474, 773 S.W.2d 827 (1989), we do not address appellant's argument concerning Hawley's statement to the sheriff.

Neither do we find error in the trial court's exclusion of Hawley's statements to Dr. Marino, a psychiatrist who evaluated Hawley. Appellant's argument on this point is somewhat convoluted, but the thrust of the argument is set out in the following passage:

> The Court had previously ruled that the deposition of Dr. Marino, who had worked at the Arkansas State Hospital and who had evaluated Mr. Hawley could not be used and not be introduced into evidence, but it is maintained that statement [sic] made by Mr. Hawley to Dr. Marino and to anyone else would be legally usable to test the veracity of Mr. Hawley.

■ Appellant failed to abstract any trial proceedings relating to Dr. Marino's statements or statements made by Hawley to Dr. Marino. However, our search of the record reveals that the trial court granted the state's motion in limine to exclude evidence of a deposition of Dr. Marino. At the hearing on the state's motion, the trial court excluded the evidence after appellant's counsel conceded that he wanted to use Dr. Marino's deposition for the purpose of showing that Dr. Marino did not believe that Hawley was credible. We find no abuse of discretion in the trial court's ruling as we have held that the credibility of witnesses and the weight accorded to their testimony is solely within the province of the jury. *Caldwell* v. *State*, 267 Ark. 1053, 594 S.W.2d 24 (1980).

■ On appeal, appellant argues that Hawley's statements to Dr. Marino should have been admitted to test the veracity of Hawley. A.R.E. Rule 613 permits the use of a witness' prior statement for impeachment purposes if the prior statement is inconsistent with the witness' trial testimony. This rule, however, does not apply in the instant case as the record does not indicate that appellant attempted to impeach Hawley with statements Hawley made to Dr. Marino. Later, after Hawley and several other witnesses testified, appellant requested a clarification on the ruling regarding Dr.Marino's deposition, and the court restated its prior ruling that the deposition was inadmissible. Again, we find no error in the ruling of the trial court as appellant never attempted to impeach Hawley's credibility with statements Hawley made to Dr. Marino. Appellant concludes this portion of his argument with citations to Rule 801(d)(1) and Rule 806 of the Uniform Rules of Evidence. Appellant, however, does not state the relevance of these rules for purposes of his argument, and we are unaware of any authority in these rules for reversing the rulings of the trial court.

Appellant's third allegation of error is that the trial court erred in refusing to grant defendant's motion for change of venue. Appellant argues that extensive pretrial publicity and the standing of the victim's family in the community denied him a fair and impartial trial in Lonoke County.

The record reveals that the Spence murder investigation received extended coverage in several area newspapers. However,

the prominence and extent of coverage diminished with the passage of time. While sixty-two residents of Lonoke County signed affidavits stating that they did not believe appellant could receive a fair trial in Lonoke County, these affidavits are conclusory and fail to state facts supporting the conclusion that appellant could not receive a fair trial in Lonoke County. At the hearing on appellant's motion to change venue, appellant presented the testimony of his parents and two family friends who testified that they did not believe appellant could receive a fair trial. The trial court reserved the right to rule on the motion until the conclusion of sequestered *voir dire*, at which time he denied appellant's motion.

During *voir dire*, several prospective jurors stated that they had read newspaper accounts of the murder, but most stated that they had either forgotten the information or set it aside. Each person eventually seated as a juror stated that he or she would be able to give McArthur a fair trial and follow the instructions of the court, and appellant did not exhaust his peremptory challenges.

■■ A change of venue should be granted only when it is clearly shown that a fair trial is not likely to be had in the county. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). The defendant carries the burden of proof, and we will uphold the trial court's decision unless an abuse of discretion is shown. *Id.* In order for the defendant to prevail on a change of venue motion, the witnesses must be able to show that they have a general knowledge as to the state of mind of the inhabitants of the whole county or that they are cognizant of prejudice existing throughout the whole county. *Morris* v. *State*, 302 Ark. 532, 792 S.W.2d 288 (1990); *Gardner, supra*. The trial court has the opportunity to observe the witnesses, and we have repeatedly emphasized the opportunity in deciding whether the denial of a motion to change venue constituted an abuse of discretion.

■ It is not necessary that jurors be totally ignorant of the facts surrounding the case, as long as they can set aside any impression they have formed and render a verdict solely on the evidence at trial. *Id.* We have also held that there can be no error in the denial of a change of venue in cases such as this one where an examination of the jury shows that an impartial jury was

selected and that each juror stated he or she could give the defendant a fair trial and follow the instructions of the court. *Id.*

■ Appellant, however, argues that the trial court abused its discretion by stating that Lonoke County was not "a close-knit community" and by relying on case law which he did not disclose to appellant. The record reveals that the court stated, "the Court can almost guarantee you that this is not a 'close-knit community,' " after the court had read the affidavits and heard the testimony in support of the defendant's motion. As the trial court was in the best position to judge the credibility of the defendant's evidence, we cannot say that the court's finding was an abuse of discretion. The trial court also stated that "[t]here's other case law which the Court has based its decision upon, but we won't go into that at this particular time." Appellant did not object or request the trial court to disclose the case law he relied upon, and we fail to see how the trial court's statement prejudiced appellant.

■ Appellant also suggests that we overrule our prior cases holding that witnesses on a change of venue motion must demonstrate county-wide knowledge of prejudice or the county's state of mind. We decline the invitation and find no abuse of discretion in the trial court's denial of appellant's motion to change venue.

Appellant's final argument is that the trial court erred in denying appellant's motion to dismiss because the capital murder statute is unconstitutional. Appellant was convicted of capital felony murder under Ark. Code Ann. § 5-10-101(a)(1) (Supp. 1989). This subsection provides:

> (a) A person commits capital murder if:
>
> (1) Acting alone or with one (1) or more other persons, he commits . . . robbery, . . . and in the course of and in furtherance of the felony, . . . or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life[.]

Appellant argues that the capital felony murder statute imper-missibly overlaps with the first degree murder statute because the

two felony murder statutes are not sufficiently distinguishable.

██ This court has repeatedly rejected appellant's argument. *Smith* v. *State*, 306 Ark. 483, 815 S.W.2d 922 (1991); *Hill* v. *State*, 303 Ark. 462, 798 S.W.2d 65 (1990); *Sellers* v. *State*, 300 Ark. 280, 778 S.W.2d 603 (1989). We have held that the statutes are not constitutionally infirm because there is no impermissible uncertainty in the definitions of the capital murder offenses.

██ Appellant also argues that the capital felony murder statute is constitutionally invalid because no narrowing mechanism exists to prevent an arbitrary and discriminatory application of the death penalty or life without parole. We reject this argument because appellant did not receive the death penalty and he has no standing to raise the argument. *Van Pelt* v. *State*, 306 Ark. 624, 816 S.W.2d 607 (1991); *Smith, supra; Sumlin* v. *State*, 266 Ark. 709, 587 S.W.2d 571 (1979). Appellant attempts to circumvent the standing issue with his argument that appellant's sentence constituted "an arbitrary and discriminatory application of the . . . life without parole" sentence. We do not consider appellant's argument because he fails to offer a compelling reason or authority for extending the prohibition against an arbitrary and discriminatory imposition of the death penalty to a sentence of life without parole.

Pursuant to Ark. Sup. Ct. R. 11(f), the entire record has been reviewed and this review has uncovered no prejudicial error warranting reversal.

Accordingly, we affirm.