Leon MASK *v.* STATE of Arkansas

CR 93-329                                      869 S.W.2d 1

Supreme Court of Arkansas
Substituted Opinion on Denial of Rehearing
September 27, 1993[1]

---

[1] Original opinion was delivered July 12, 1993.

*Burbank, Dodson & McDonald*, by: *Jack W. Barker*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. The appellant, Leon Mask, was convicted of two counts of aggravated robbery and one count of kidnapping and sentenced to three forty-year prison terms to run consecutively. He argues the Trial Court erred by (1) failing to run his sentences concurrently, (2) allowing one of the robbery victims to sit at counsel's table after testifying, (3) failing to hold a pretrial hearing on the issue of his competency to stand trial, (4)

finding him competent to stand trial, (5) overruling his directed verdict motion. We must reverse on the second point. After a discussion of the evidence, we will first address point 5, *Harris* v. *State,* 284 Ark. 247, 681 S.W.2d 334 (1984), and then move on to other points which may arise upon retrial. We will not address the point complaining about error in imposing consecutive sentences because no objection was raised at the trial. *Fellows* v. *State,* 309 Ark. 545, 828 S.W.2d 847 (1992).

Altheia Henderson testified that a man she later identified as Mask entered Rainbow Food Mart # 5 in El Dorado at approximately six o'clock in the evening of January 20th, 1992, as she began her cashier shift. Mask paid for gasoline and left the store. Ms. Henderson testified he returned shortly thereafter and went to the bathroom located inside. He then got a cup of coffee and waited until the remaining customers had left. He approached the counter, pointed a gun at her, and asked for the money contained in the cash register and safe. He then forced Ms. Henderson at gunpoint to get into his car and drove to Rainbow Food Mart # 3, another convenience store in El Dorado.

On the way to the second store Mask became upset and again threatened Ms. Henderson with the gun when she did not promptly answer his question regarding how much money had been in the safe. When Mask left the car to enter the second store, Henderson fled to a nearby house and called the police. She identified Mask from photographs prepared by the police and identified him at trial as the robber.

Patricia Curry testified of working at Rainbow Food Mart # 3 when Mask entered the store, pointed the gun at her, and took the money from the cash register. Ms. Curry was able to provide police with the license number of the car Mask was driving. It was traced to Mask's sister who said Mask had borrowed her car that evening.

At trial, Mask relied exclusively on the defense of not guilty by reason of insanity. He testified he did not remember any of the events occurring after six o'clock in the evening on the 20th. He did not remember committing any robberies and only turned himself in to the police to find out what had happened and why he was in trouble. He stated he heard strange sounds, saw visions of people talking to him, and had tried to commit suicide three times

after the arrest. Mask's father testified his son had not been himself since the arrest and needed psychological help.

In rebuttal, the State offered the testimony of Dr. John Anderson, a licensed psychologist employed by the Arkansas Division of Mental Health. Dr. Anderson was the primary evaluator responsible for determining whether Mask was competent to stand trial and whether he was legally responsible for his actions at the time of the alleged offenses. At the conclusion of the examination, Dr. Anderson found Mask suffered from no mental disease or defect which might render him incompetent to stand trial or not responsible for his actions. Instead, Dr. Anderson diagnosed Mask as "malingering," which meant he was feigning a mental illness for some secondary purpose. Dr. Anderson based this diagnosis in part on the fact that Mask was uncooperative with examiners by refusing to answer questions but would interact well with other patients during recreational activities. Dr. Anderson found Mask's behavior inconsistent with a mental disease or defect and found no medical explanation for the behavior other than malingering.

## 1. Directed verdict

Mask asserts the Trial Court should have directed a verdict in his favor because the State failed to sustain its burden of proving he purposely committed the crimes and because he proved he was not guilty by reason of insanity by a preponderance of the evidence. Once the State meets its burden of proving the elements of the offense beyond a reasonable doubt, the burden shifts to the defendant to prove an affirmative defense by a preponderance of the evidence. See *Walker* v. *State*, 308 Ark. 498, 825 S.W.2d 822 (1992).

The question on appeal from a denial of a directed verdict is whether there is substantial evidence to support the verdict. *Davasher* v. *State*, 308 Ark. 154, 823 S.W.2d 863 (1992). The State presented substantial evidence that Mask employed physical force with the purpose of stealing the money in the cash registers and safe. Ark. Code Ann. § 5-12-103(a)(1) (1987). There was substantial evidence that Mask forced Henderson into his car at gunpoint with the purpose of facilitating the commission of another aggravated robbery. Ark. Code Ann. § 5-11-102(a) (1987). The testimony of the two victims provides

substantial evidence of Mask's intent to commit the crimes.

Mask's main argument concerns his affirmative defense asserted at trial that he was not guilty by reason of mental disease or defect. He contends there is insufficient evidence to support the jury's finding that he was sane or had the mental capacity necessary to perform the crime.

It is well settled that Mask had the burden of proving his affirmative defense by a preponderance of the evidence. Ark. Code Ann. § 5-2-312 (1987); *Campbell* v. *State*, 265 Ark. 77, 576 S.W.2d 938 (1979). Mask failed to offer any substantial evidence that he suffered from a mental disease or defect. Although he claimed he heard sounds, saw visions, and tried to commit suicide, the jury is not required to believe the testimony of the accused. *Zones* v. *State*, 287 Ark. 483, 702 S.W.2d 1 (1985). The State offered expert testimony, uncontradicted by other expert testimony, that Mask suffered from no mental disease or defect at the time of the offenses. There was substantial evidence to support the jury verdict.

### 2. Seating of victim

The Trial Court committed reversible error by allowing Ms. Henderson to sit at counsel's table during the trial. After Ms. Henderson testified, the State requested she be allowed to sit at counsel's table during the remainder of the trial. Defense counsel objected on the ground that the seating arrangement would prejudice Mask and inflame the jury. The Trial Court overruled the objection, determining Henderson had a right to be seated at the table under Ark. R. Evid. 616. Colloquy among counsel and the Trial Court was as follows:

> MS. COMPTON: [Deputy Prosecutor] We call Judy Dumas and also ask the Court to allow the victim of the aggravated robbery to be seated at counsel table with us.

> MR. BARKER: [Defense Counsel] Your Honor, may we approach?

> THE COURT: Yes, sir.

> COUNSEL AT THE BENCH OUT OF HEARING OF THE JURY:

MR. BARKER: Your Honor, I'm going to object to her sitting at the counsel table. This is a crime against the State of Arkansas. I don't think that it would serve any purpose other than to prejudice my client and inflame the jury's passion. I think it's completely unnecessary. Therefore, I would object.

THE COURT: The objection is overruled. Under Rule 616, the victim of a crime may sit at counsel table throughout the trial.

MR. BARKER: Yes, sir.

MS. COMPTON: Thank you, your Honor. I don't have any problem with her sitting some place other than at the counsel table. She does want to be in the courtroom.

THE COURT: I don't want her talking to other people. That's why she should sit at the counsel table.

MS. COMPTON: I understand.

THE COURT: There's too much conversation going on.

MS. COMPTON: I understand.

Mask contends allowing the victim to sit directly in front of the jury unduly emphasized her testimony and unfairly prejudiced him. He concedes there is no way to know for certain whether the seating arrangement had any improper effect on the verdict, but we observe that the jury recommended the maximum *number of years on each charge short of life imprisonment.*

As a general rule, a trial court may control the seating arrangement in the courtroom, and unless a party suffers some prejudice from the arrangement, seating is not a ground for reversal. *Webster* v. *State,* 284 Ark. 206, 680 S.W.2d 906 (1984). In this instance, however, Ark. R. Evid. 616, which we adopted in our opinion in *Stephens* v. *State,* 290 Ark. 440, 720 S.W.2d 301 (1986), is relevant. The Trial Court misinterpreted it. It says nothing about allowing a victim of a crime to sit at counsel's table. The Rule states:

Rule 616. Right of victim to be present at hearing. — Notwithstanding any provision to the contrary, in any

criminal prosecution, the victim of a crime, and in the event that the victim of a crime is a minor child under eighteen (18) years of age, that minor victim's parents, guardian, custodian or other person with custody of the alleged minor victim shall have the right to be present during any hearing, deposition, or trial of the offense.

Mask concedes that, pursuant to Rule 616, Henderson had a right to remain in the courtroom after she testified. The question is whether Mask was prejudiced by her sitting at counsel's table as opposed to sitting in the spectator area of the courtroom.

In *Moore* v. *State*, 299 Ark. 532, 773 S.W.2d 834 (1989), we reversed a conviction when the Trial Court allowed three policemen who had testified against Moore to sit inside the railing in the courtroom, in a place normally reserved for parties, directly in front of the jury, during closing arguments. Despite the fact that the policemen were not in the courtroom during the testimony of any other witnesses, the State argued their presence was necessary to give the Court security from a rumored escape attempt. We held the case presented a manipulation of the seating arrangement in the name of security to emphasize the testimony of certain witnesses over others. The occurrence was tantamount to the Trial Court expressing an opinion on the credibility of witnesses. We see the same danger here. Moore was given the maximum sentence. Mask was given the maximum number of years for each of the three offenses, and the three 40-year sentences were stacked, resulting in a sentence to 120 years imprisonment.

Arkansas Rule of Evidence 615 deals with exclusion of witnesses from the courtroom upon motion or upon the initiative of a trial court. It makes an exception which precludes exclusion of "a party who is a natural person." It also allows for an "officer or employee of a party that is not a natural person designated as its representative . . . or a person whose presence is shown by a party to be essential to the presentation of his cause." It too says nothing about allowing a witness to sit at counsel's table.

Ms. Henderson was not a party to this case. The prosecuting party was the State of Arkansas. Some states allow the victim of a crime to sit at counsel's table by statute. *See, e.g.,* *Crove* v. *State*, 485 So.2d 351 (Ala. Cr. App. 1984). We have no

such law. In the *Moore* case we recognized that it was improper for a trial court, in the name of security, in effect to comment on the evidence. We see no significant difference between this case and that one.

### 3. Competency to stand trial

#### a. Right to a hearing

Mask argues the Trial Court erred by not holding a pretrial hearing on his competency to stand trial. Prior to trial, Mask notified the Court of his intention to raise the affirmative defense of mental disease or defect, and he was subsequently committed to the State Hospital for examination. On October 22, 1992, the examiners provided the Court with their report stating Mask was aware of the nature of the charges filed against him and was capable of cooperating effectively with an attorney in the preparation of his defense.

Arkansas Code Ann. § 5-2-309(b) (1987) provides that if neither party contests the competency finding, the court may make the determination on the basis of the examiner's report. If the finding is contested, the court shall hold a hearing on the competency issue. Ark. Code Ann. § 5-2-309(c) (1987). Here, there is no indication in the record that Mask contested the finding, and thus according to the language of the Statute, the Court was not required to hold a hearing on the issue.

#### b. Competency determination

Mask next states the Trial Court erred by finding him competent to stand trial. As stated previously, the report which was uncontradicted stated Mask was able to understand the proceedings against him and assist in his own defense. Ark. Code Ann. § 5-2-302 (1987). We find no evidence which would support a finding that Mask was incompetent to stand trial. A defendant in a criminal case is ordinarily presumed to be mentally competent to stand trial, and the burden of proving incompetence is upon the defendant. *Lipscomb* v. *State*, 271 Ark. 337, 609 S.W.2d 15 (1980); *Deason* v. *State*, 263 Ark. 56, 562 S.W.2d 79 (1978).

Reversed and Remanded.

GLAZE and CORBIN, JJ., dissent.

TOM GLAZE, Justice. No cognizable legal reason exists which authorizes the majority court to reverse this case. The court's decision not only improperly invades a trial judge's responsibility and province to conduct a fair trial as the circumstances arise and warrant, it also presumes the jurors in this case were incapable of reaching a fair verdict on the overwhelming evidence of guilt presented them.

Mask concedes Altheia Henderson, the victim of Mask's crimes, had a right to remain in the courtroom during the trial. His only objection is that Ms. Henderson was permitted to sit at the counsel table. After Mask's counsel made her objection, the trial judge said, "I don't want her [Henderson] talking to other people. That's why she should sit at the counsel table." The judge added, "There's too much conversation going on." Defense counsel offered no response to the trial judge's remarks.

The judge is not merely the chairman of the trial, who must remain mute until a party calls upon him or her to make a ruling, the judge has some responsibility for the proper conduct of the trial and the achievement of justice. *Kitchen v. State*, 271 Ark. 1, 607 S.W.2d 345 (1980). This court has also said that a trial court's rulings on matters pertaining to the conduct of trial and the admission of evidence are within the judge's discretion, and such rulings will not be set aside absent a manifest abuse of discretion. *Roleson v. State*, 277 Ark. 148, 640 S.W.2d 113 (1982).

Here, the trial judge gave a sound reason why he seated Ms. Henderson at the counsel table, and defense counsel stood mute, giving no countermanding reason for seating Henderson elsewhere in the courtroom. In my view, it is nonsensical to say that the mere seating of the prosecuting witness in a courtroom can automatically be reversible error when the witness is placed at the counsel's table. After all, if Henderson's seating distance from the jurors was defense counsel's concern, Ms. Henderson could have seated herself on the spectator's front row near the jury box to make the jurors mindful of her presence. If defense counsel's concern was the jurors' perception of the victim's alliance with the state in this trial, I pose the question, "Are jurors so ignorant of the criminal trial process that they do not know the state's case rests largely on the victim's account of how she was criminally

violated?" The state's case against Mask depended upon two victims' accounts of Mask's crime spree, and I suggest jurors are intelligent enough to know the prosecutor is relying on these victims' testimonies and descriptions of what occurred in order to convict Mask of the charges filed against him.

In the present case, it is easier to speculate that Mask's, not Henderson's, presence at counsel's table was what produced the sentences he received. Mask's guilt was proved by overwhelming evidence and a recitation of the evidence is set out in the majority opinion. Mask committed two robberies at gun point and a kidnapping. Mask offered no proof he did not perform these crimes, and the jury had every reason based on the evidence to give Mask the sentences imposed, and it is rank conjecture to suggest Henderson's mere presence at the counsel's table caused such sentences. The state properly points out that Mask concedes in his brief that he could show no prejudice resulted by the victim's presence at the prosecution's table. Nonetheless, the majority court takes it upon itself to find prejudice by asserting the jury recommended "the maximum number of years imprisonment short of life." Of course, the jury could have recommended life imprisonment but instead recommended forty years. Clearly, Mask did not receive the maximum punishments and the majority court's sleight-of-hand and improper attempt to re-define "maximum sentence" in its effort to show prejudice and reversible error is patently wrong. To require reversal, Mask was required to demonstrate prejudice. *Sheridan* v. *State*, 313 Ark. 23, 852 S.W.2d 772 (1993). Prejudice does not arise out of "thin air" as the majority has attempted to do in this case.

Also, I note that the majority opinion mentions that somehow Henderson's presence was tantamount to the trial court's expressing an opinion on her credibility as a witness, but there is nothing in the record that reflects the jurors were aware of the trial court's ruling on this matter or of its concern as to how to conduct or control the trial.

In conclusion, it was Mask's burden on appeal to show the trial judge manifestly abused his discretion when he ruled Henderson should sit at counsel's table. The reason given by the trial judge reflected his attempt to assure nothing the victim might say or do during trial would keep Mask from getting a fair trial. Under these circumstances, the trial judge's ruling was in

Mask's best interests; certainly Mask made no attempt to show otherwise. Even if you accept the majority's assertion that error occurred here, such an error was harmless. When the evidence of guilt is overwhelming, an error of even constitutional proportions may be found to be harmless beyond a reasonable doubt. *Smith* v. *State*, 303 Ark. 524, 798 S.W.2d 94 (1990); *Numan* v. *State*, 291 Ark. 22, 722 S.W.2d 276 (1987). I should also note here that the majority cites *Moore* v. *State*, 299 Ark. S.W.2d 834 (1989), where this court reversed because law enforcement officers were allowed to sit inside the courtroom railing. That case was a 4-3 decision, but factually that case is so distinguishable it is in no way controlling. There, police officers had no right to be in the courtroom during trial; here the victim(s) had every right to be present throughout the entire trial under our Rule of Evidence 616.

The majority is wrong to reverse this case under the facts set out in the opinion. For the foregoing reasons, I would affirm.

CORBIN, J., joins this dissent.