Earl BAUMGARNER *v.* STATE of Arkansas

CR 93-383

872 S.W.2d 380

Supreme Court of Arkansas
Opinion delivered March 21, 1994

376

*Chet Dunlap*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sherry Daves*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant, Earl Baumgarner, was arrested December 30, 1991, and charged with the kidnapping and first degree battery of Brenda Dixon. He abducted the victim at knifepoint from a convenience store in Fisher, cut her, and caused her to suffer a broken kneecap. Appellant was convicted of both charges and, as a habitual offender, received consecutive sentences of life imprisonment and forty years. We affirm the judgment of convictions.

Six of appellant's seven assignments of error involve the denial of various motions made at trial. He does not question the sufficiency of the evidence, so we recite only the facts related to the motions. On March 31, 1992, appellant filed a motion requesting a psychiatric examination. The trial court promptly ordered an examination. *See* Ark. Code Ann. § 5-2-305(a)(2) (Repl. 1993). Dr. Thomas Heissler, a forensic psychologist, went to the jail to conduct the examination, but appellant stated that he would not talk to him until he conferred with his attorney. Dr. Heissler could do nothing further and left without conducting the examination. Neither appellant nor his attorney made an effort to contact Dr. Heissler and let him know that appellant was ready to proceed with the examination. On August 27, Dr. Heissler wrote the

deputy prosecuting attorney that he had been unable to complete the examination.

The case was set for jury trial on November 23. A pre-trial hearing was held on November 16, 1992, and, at that time, appellant's attorney stated that appellant had never been examined. The next day, November 17, another pre-trial hearing was held. Appellant's sister testified that appellant was not competent to stand trial. The trial court ordered that a mental examination be conducted forthwith. Dr. Heissler returned to the jail and conducted a clinical interview, administered a Wechsler Adult Intelligence Scale-Revised test, reviewed statements of the victim, a deputy sheriff, and a friend of appellant's, and looked at appellant's "rap sheet." Shortly thereafter, Dr. Heissler told the deputy prosecutor that his preliminary evaluation was that appellant was competent to stand trial and knew the difference between right and wrong at the time he committed the crimes. The deputy prosecutor passed this information on to appellant's attorney. Meanwhile, on November 18, yet another pre-trial hearing was conducted, this time to determine whether appellant should be granted a change of venue. The trial court denied the motion. At this same hearing the State sought, and was granted, permission to amend the information to allege that the kidnapping was done to "terrorize another" and to allege that appellant was a habitual offender.

By November 20, appellant's attorney had not received a copy of Dr. Heissler's written report, and he moved for a continuance on the ground that he had not received a copy of the report. Dr. Heissler called the deputy prosecutor on November 22 and told him the written report was completed. The deputy prosecutor drove to Dr. Heissler's office in Wynne, got the report, drove back to Harrisburg, called appellant's lawyer, and gave him a copy of the report at 6:00 that evening. The report was filed the next morning, the first day of appellant's trial. Appellant again moved for a continuance, this time on the ground that he did not have adequate time to prepare his affirmative defense of lack of mental capacity. The trial court denied the motion.

Appellant's first assignment is that the trial court erred in refusing to grant a continuance because the written psychiatric report was given to the defense attorney only fourteen hours

before the trial began. The trial court's ruling was based, in part, on facts stated by counsel in their argument on the motion, and those facts, along with the others shown by the pleadings, are as follows. As soon as appellant's counsel mentioned the possibility of defense of mental disease the trial court ordered the examination. The forensic psychologist immediately attempted to conduct the examination, but was thwarted by the refusal of appellant to cooperate. This was on March 31. Appellant's attorney did not notify the trial court that the examination had not been conducted until November 20, or just three days before the trial was set. When the trial court learned there had not been an examination, it ordered one conducted forthwith. The psychologist completed the examination the next day, and, by phone, told the deputy prosecutor the preliminary result. The deputy prosecutor immediately told appellant's attorney of the preliminary report. The written report was received on November 22 and given to appellant's attorney at 6 p.m. The written report conformed with the earlier preliminary statements that appellant was competent to stand trial. From this it is clear that, while the appellant's attorney only received the written report fourteen hours before the trial commenced, he knew in advance what it would provide. In addition, the difficulties were caused by appellant's refusal to submit to the tests at an earlier time and his failure to notify the trial court that the examination had not been conducted.

Appellant failed to exercise due diligence in obtaining the examination. Failure to exercise due diligence alone can be the basis to deny a motion for a continuance. *Walls* v. *State*, 280 Ark. 291, 658 S.W.2d 362 (1983). In addition, A.R.Cr.P. Rule 27.3 provides for the grant of a continuance "only upon a showing of good cause." The denial of a motion for continuance is within the sound discretion of the trial court and will not be reversed absent a showing of abuse. *Stone* v. *State*, 290 Ark. 204, 718 S.W.2d 102 (1986). Appellant bears the burden of showing abuse and of demonstrating prejudice. *Mann* v. *State*, 291 Ark. 4, 722 S.W.2d 266 (1987). Appellant has failed to show that the trial court abused its discretion under these facts. Appellant has also failed to show that he was prejudiced by the denial of the motion because he was able to secure an examination and the testimony of a neuropsychologist on the issue of his competence.

Appellant's next two assignments are that the court

erred in allowing the State to amend the information to allege that he was a habitual offender and that the kidnapping was done to "terrorize another." The habitual offender act is based on the concept that one who is a persistent offender warrants an increased punishment for the protection of the community. *Finch* v. *State*, 262 Ark. 313, 556 S.W.2d 434 (1977). Whenever the State seeks to charge a defendant as a prior offender in order to seek additional punishment, it is essential that a habitual offender allegation be included in the information. *Id.* at 316, 556 S.W.2d at 436. The purpose of this requirement is to give the defendant notice of the essential elements the State relies upon to assess punishment. *Id; see also Baugh* v. *State*, 256 Ark. 64, 505 S.W.2d 519 (1974).

It is well settled that an information may be amended up to a point after a jury has been sworn if it does not change the nature of a crime, or create unfair surprise. *See Kilgore* v. *State*, 313 Ark. 198, 852 S.W.2d 810 (1993); *Wilson* v. *State*, 286 Ark. 430, 692 S.W.2d 620 (1985). We have held that an amendment which adds an allegation of habitual offender does not change the nature or degree of the crime. *Finch*, 262 Ark. at 317, 556 S.W.2d at 436; *Osborne* v. *State*, 237 Ark. 170, 371 S.W.2d 518 (1963). Such an amendment simply authorizes a more severe punishment, not by creating an additional offense or an independent crime, but by affording evidence to increase the final punishment in the event the defendant is convicted. *Finch*, 262 Ark. at 317, 556 S.W.2d at 436; *see also Higgins* v. *State*, 235 Ark. 153, 357 S.W.2d 499 (1962).

The sole question for the trial court to resolve is whether the defendant is unfairly surprised by such an amendment. We addressed an argument similar to the one at bar in *Kilgore*, in which the appellant urged reversal because the State was allowed to amend on the day of the trial, charging him as a habitual offender, and he did not "fully know the charges against him until the day of the trial." 313 Ark. at 201, 852 S.W.2d at 812. We refused because Kilgore did not show that either he was unaware of the charges against him or surprised by the nature of the amendment. *Id.* We wrote that "[t]he fact that an amendment authorizes a more severe penalty does not change the nature or degree of the offense." *Id.*

Similarly, in *Traylor v. State*, 304 Ark. 174, 177, 801 S.W.2d 267, 269 (1990), we refused to reverse for the addition of a habitual offender amendment when it was shown that the defendant had been given a "rap sheet" showing prior convictions, thus could not effectively argue surprise. *See also Mann v. State*, 291 Ark. 4, 722 S.W.2d 266 (1987).

A similar situation exists in this case. There was ample evidence that appellant's attorney knew he was a prior offender and that the attorney was not surprised by the amendment. At a pretrial hearing appellant's sister testified that he had been incarcerated in California on more than one occasion for various crimes, and appellant's attorney acknowledged that the deputy prosecutor had given him a copy of appellant's lengthy "rap sheet." The deputy prosecutor previously stated that he would seek to amend the information if the certified copies of the convictions were received from the State of California before the trial commenced. In sum, there was no showing of unfair surprise by the amendment.

■■ The trial court did not err in allowing the State to amend the charge of kidnapping to allege that it was done for the purpose of "terrorizing another." An amendment may be made, with permission of the trial court, so long as it does not change the nature of the crime charged or the degree of the crime charged. Ark. Code Ann. § 16-85-407 (1987); *Prokos v. State*, 266 Ark. 50, 282 S.W.2d 36 (1979). This amendment did not change the *nature* of the alleged kidnapping, rather it amended only the *manner* of the alleged commission of the crime of kidnapping. *See Jones v. State*, 275 Ark. 12, 627 S.W.2d 6 (1982). Appellant additionally argues that, even if allowing the amendment was not error, the refusal to grant a continuance after the amendment was error. Again, the burden is on appellant to show that the trial court abused its discretion and that he was prejudiced. *David v. State*, 295 Ark. 131, 748 S.W.2d 117 (1988). Appellant failed to make such a showing. In his argument to the trial court, appellant's attorney stated that he needed additional time to "investigate this 'terrorizing another' [so as to] be able to defend on it." However, the trial court was aware that the original information contained the allegation that appellant restrained the victim and interfered with her liberty. Thus, appellant had fair notice that the State was accusing him of using physical force on the victim and

should not have been surprised when he was charged with "terrorizing" her.

Appellant additionally argues that the trial court erred in not granting a continuance after allowing the amendments, but since there was no surprise to appellant, there was no error in refusing to grant a continuance. Appellant contends that until the written report on competency was received, it was not necessary to prepare his defense of mental defect, and, by the time it was received, he needed more time to secure witnesses for that affirmative defense. The argument is without foundation for either of two reasons. First, appellant did not exercise due diligence because he did not disclose that he planned to offer an affirmative defense even though he had been ordered to disclose the names of his witnesses. Second, while the court did not grant a continuance, it did grant a recess from November 24 until November 30, and, during that time, appellant employed Dr. William Wilkins, a neuropsychologist, who testified that appellant was unable to conform his behavior to the law. Thus, appellant has not shown any possible prejudice.

Appellant next contends that trial court erred in refusing to grant a change of venue. He testified that he is a distant relative of an infamous convicted felon, and, because of the stigma attached to his name, it was impossible to assemble an impartial jury in Poinsett County. His motion was supported by affidavits of three disinterested residents of the county. However, the distant relative's conviction was ten years earlier, and the witnesses did not state that they had a general knowledge of the state of mind of the county's inhabitants, nor did they state that they were aware of prejudice throughout the county.

The defendant carries the burden of proof in showing that a court has abused its discretion in denying a change of venue. *Gardner* v. *State*, 296 Ark. 41, 754 S.W.2d 518 (1988). A change of venue should be granted only when it is clearly shown that a fair trial is not likely to be had in that county. *Id.* at 53, 754 S.W.2d at 523. This court has held that witnesses who testify in support of a change of venue must be able to show that they have a general knowledge of the state of mind of the county's inhabitants, or that they are aware of prejudice throughout the county. *McArthur* v. *State*, 309 Ark. 196, 830 S.W.2d 842

(1992). Appellant's witnesses did state that they were aware of prejudice existing throughout the area, but they admitted that they had not discussed the matter with anyone lately. The trial court had the opportunity to observe these witnesses and to determine the weight of their testimony. We have repeatedly emphasized this opportunity in deciding whether the trial court abused its discretion. *McArthur*, 309 Ark. at 203, 830 S.W.2d at 846; *Gardner*, 296 Ark. at 52, 754 S.W.2d at 523; *Hill* v. *State*, 275 Ark. 71, 628 S.W.2d 284 (1982).

We have also said that there is no error in refusing a change of venue if voir dire shows that an impartial jury has been selected. *Perry* v. *State*, 277 Ark. 357, 642 S.W.2d 865 (1982). Voir dire is omitted from the record, and, accordingly, appellant cannot demonstrate error.

Appellant also contends the trial court erred in finding that he was mentally competent to stand trial. The trial court held a hearing on the matter, and Dr. Heissler testified that the Wechsler Adult Intelligence Scale-Revised test showed that appellant's verbal intelligence quotient was 85 and that he had a good vocabulary. Based on this data, the interview of appellant, and other records, he concluded that appellant was able to understand the proceedings against him and was able to assist in his defense. Appellant put on the testimony of five lay witnesses who testified that appellant was not communicative, was withdrawn, and seemed to lack all emotion. Four of the lay witnesses, who were jail inmates, testified that he was "not right in the head." The fifth witness, his sister, testified that he did not remember committing the crimes. The trial court concluded that appellant was competent to stand trial.

The test of competency to stand trial is whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him. *Lipscomb* v. *State*, 271 Ark. 337, 609 S.W.2d 15 (1980). Dr. Heissler's testimony and the test results support the finding that appellant had a present ability to communicate with his lawyer and that he understood the proceedings. While there was testimony that appellant did not remember the crime, the psychologist's report expressed doubt about appellant's truthfulness.

In addition, lack of memory alone cannot serve as a basis for a finding an accused incompetent to stand trial. *See Rector* v. *State*, 277 Ark. 17, 638 S.W.2d 672 (1982). An accused is presumed competent to stand trial, and the burden of proving incompetence is on the accused. *Mask* v. *State*, 314 Ark. 25, 858 S.W.2d 108 (1993). Appellant failed to meet this burden, and the trial court's ruling was based upon substantial evidence.

■■■ Appellant next argues that the trial court erred in refusing to direct a verdict for him on his affirmative defense of lack of mental capacity. The State proved the elements of both crimes. After the State met its burden of proving the elements of an offense beyond a reasonable doubt, the burden shifted to the defendant to prove the affirmative defense by a preponderance of the evidence. *Mask*, 314 Ark. at 28, 858 S.W.2d at 110; *Walker* v. *State*, 308 Ark. 498, 825 S.W.2d 822 (1992). The question is one for the jury, and the judge may direct a verdict only if no factual issue exists. *Franks* v. *State*, 306 Ark. 75, 811 S.W.2d 301 (1991). The question for a reviewing court to resolve on a denial of a directed verdict is whether there is substantial evidence to support the verdict. Mask, 314 Ark. at 28, 858 S.W.2d at 110; *Davasher* v. *State*, 308 Ark. 154, 823 S.W.2d 863 (1992).

To succeed on his affirmative defense, appellant had to show by a preponderance of the evidence that, at the time of the kidnapping and battery, "he lacked capacity, as a result of mental disease or defect, to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct." Ark. Code Ann. § 5-2-312(a) (Repl. 1993). In his attempt to meet this burden, appellant presented testimony from three fellow inmates, his sister, and Dr. William E. Wilkins, a neuropsychologist. The inmates each testified that they had concluded, upon observing appellant's behavior while they were in jail with him, that he did not know right from wrong, and that something was "bad wrong" with him. His sister, Ms. Runyon, testified that, based on her observations of her brother's noncommunicative and depressed behavior around the time of the crime, she believed he lacked capacity to obey the law. Dr. Wilkins, who had examined appellant during the time of the trial, testified that, although appellant knew right from wrong, it was his opinion that he was unable to control his behavior. He had concluded that appellant had some brain damage and an organic personality disorder, which, when

coupled with the long-term effects of alcohol abuse, rendered appellant unable to conform his behavior to the law.

In rebuttal, the State presented testimony from Dr. Thomas Heissler, the forensic psychologist who had examined appellant in jail. Dr. Heissler disagreed with Dr. Wilkins that appellant had brain damage. He concluded that the actions, statements, and test results supported a finding of mental capacity to obey the law.

■ As is obvious, the above-recited testimony was disputed. Therefore, the trial court did not err in submitting it to the jury, and there was substantial evidence to support the jury's decision that appellant was not mentally incompetent at the time of the kidnapping and battery. *Traylor* v. *State*, 304 Ark. at 178, 801 S.W.2d at 270.

■ Appellant's final argument is that the convictions should be reversed because of cumulative error. We summarily dismiss the argument because there was no such motion made at the trial level. Even if such motion were made, we have said that we will entertain the argument of cumulative error only in rare and egregious cases. *Vick* v. *State*, 314 Ark. 618, 863 S.W.2d 820 (1993). Clearly, this case would not reach that level.

Because of the sentence in this case, an examination of the record has been made in conformity with Rule 4-3(h) of the Rules of the Supreme Court, and we find no reversible error on other rulings that were adverse to appellant.

CORBIN, J., not participating.