SLIP OPINION

Cite as 2017 Ark. 120

# SUPREME COURT OF ARKANSAS

No. CR-91-206

| | |
|---|---|
| STEVEN LARON MCARTHUR<br>PETITIONER<br><br>V.<br><br>STATE OF ARKANSAS<br>RESPONDENT | **Opinion Delivered** April 6, 2017<br><br>PRO SE SECOND PETITION TO REINVEST JURISDICTION IN THE TRIAL COURT TO CONSIDER A PETITION FOR WRIT OF ERROR CORAM NOBIS<br>[LONOKE COUNTY CIRCUIT COURT, NO. 43CR–90–22]<br><br>PETITION DENIED. |

**PER CURIAM**

Petitioner Steven Laron McArthur was found guilty in 1991 by a jury of capital murder in the death of Rodney Spence. He was sentenced to life imprisonment without parole. We affirmed. *McArthur v. State*, 309 Ark. 196, 830 S.W.2d 842 (1992).

McArthur has now filed in this court his second pro se petition to reinvest jurisdiction in the trial court to consider a writ of error coram nobis. The petition for leave to proceed in the trial court is necessary because the trial court can entertain a petition for writ of error coram nobis after a judgment has been affirmed on appeal only after we grant permission. *Roberts v. State*, 2013 Ark. 56, at 11, 425 S.W.3d 771, 778.

A writ of error coram nobis is an extraordinarily rare remedy. *Id*. Coram nobis proceedings are attended by a strong presumption that the judgment of conviction is valid. *Id*.; *Westerman v. State*, 2015 Ark. 69, at 4, 456 S.W.3d 374, 376. The function of the writ is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no

negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Roberts*, 2013 Ark. at 11, 425 S.W.3d at 778. The petitioner has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Id.*

The writ is allowed only under compelling circumstances to achieve justice and to address errors of the most fundamental nature. *Id.* A writ of error coram nobis is available for addressing certain errors that are found in one of four categories: (1) insanity at the time of trial, (2) a coerced guilty plea, (3) material evidence withheld by the prosecutor, or (4) a third-party confession to the crime during the time between conviction and appeal. *Id.*; *Howard v. State*, 2012 Ark. 177, 403 S.W.3d 38.

Before addressing the allegations in McArthur's petition, a brief summary of the facts and evidence adduced at trial is necessary. On January 21, 1990, a hunter discovered the body of sixteen-year-old Rodney Spence in a ditch in north Lonoke County. Spence had been shot twice in the head at close range. Spence's father testified that on the afternoon of January 20, 1990, his son had left home to go to town, driving a 1986 red Ford Ranger, with the understanding that he would be home by 10:00 p.m. that night. Spence's uncle testified that he saw Spence at approximately 6:45 p.m., and Spence told him that he was going to Cabot, Arkansas. When Spence did not return home by 10:30 p.m., his parents became worried, and they reported him missing at 12:30 a.m. on January 21, 1990. Spence's body was discovered on the same day at approximately 1:00 p.m.

On January 23, 1990, a Texas patrolman with the Plano Police Department pulled over a red Ford Ranger with Arkansas plates after hearing a national broadcast to be on the lookout for the vehicle. Donald Hawley, the driver of the truck, initially informed the

Texas authorities that he and McArthur had been staying together in Cabot, Arkansas, the past weekend. Hawley told authorities that while the two were in Cabot, McArthur showed up driving the red truck and that the two of them decided to drive to Dallas and were staying with McArthur's sister, Robin. Hawley also informed police that a pistol was located in Robin's apartment in Dallas. The Plano police obtained and executed a search warrant for Robin's apartment, where they found a gun in a nightstand drawer. Thereafter, McArthur and Hawley were taken into custody.

Hawley eventually pleaded guilty to capital murder and testified at McArthur's trial that McArthur had approached Spence in the parking lot of a grocery store in Cabot. According to Hawley, he and McArthur arranged for Spence to give them a ride to a liquor store and that Spence drove them to two liquor stores and a convenience store. When Spence went inside the convenience store, McArthur informed Hawley that he was going to persuade Spence to take them to a friend's house, and McArthur instructed Hawley to act sick when McArthur prompted him. Hawley further testified that the two planned to steal Spence's truck. McArthur directed Spence to a remote location whereupon McArthur told Spence that Hawley "looked sick." McArthur and Hawley got out of the truck on the passenger side and crouched by the truck. Spence also got out of the truck, and McArthur asked Spence for assistance in getting Hawley back in the truck. Hawley then stepped around the rear of the truck, aimed a gun at Spence, and instructed Spence to lie on the ground and empty his pockets. Hawley testified that McArthur said, "Well, shoot him," and Hawley shot Spence in the head. The two men had begun to drag Spence's body when McArthur dropped the upper half of Spence's body and stated that Spence was still alive.

According to Hawley, McArthur stated that he did not want to see Spence suffer, and McArthur fired a second shot into Spence's head. Hawley and McArthur left Spence's body in the ditch where it was eventually discovered. After killing Spence, Hawley and McArthur took Spence's truck and left for Dallas. *McArthur*, 309 Ark. at 199–200, 830 S.W.2d at 843–44.

At trial, the parties stipulated that the gun found in the nightstand drawer was the same weapon that was used to murder Spence, and McArthur testified at trial that the gun belonged to his father. McArthur testified on his own behalf and denied taking part in any plan to steal Spence's truck, and he denied taking part in the murder. McArthur testified that after murdering Spence, Hawley forced him to exit the truck and assist in moving Spence's body. McArthur's testimony was corroborated by a county-jail inmate who testified that he overheard Hawley admitting being the sole perpetrator of the crime. The jury found McArthur guilty of capital murder.

In his first petition for coram nobis relief filed in this court, McArthur asserted that he had discovered new evidence that consisted of an undated letter from Hawley forwarded to McArthur's mother wherein Hawley admitted that he had lied about McArthur's firing the second shot and instead stated that he had been the only shooter. In addition, McArthur submitted a pretrial statement that Hawley had given to his attorney admitting that he had fired both gunshots. McArthur alleged that the prosecution withheld Hawley's pretrial statement from the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). We denied the petition, concluding that McArthur had not established a *Brady* violation and

SLIP OPINION

otherwise failed to state sufficient grounds to justify coram nobis relief. *McArthur v. State*, 2014 Ark. 367, at 5–6, 439 S.W.3d 681, 685 (per curiam).

In this second petition for coram nobis relief, McArthur sets forth eleven grounds for relief. McArthur asserts in his first five grounds for relief that new evidence has emerged demonstrating his actual innocence; that this new evidence was withheld by investigating officers; that Sheriff Isaac conspired to present false testimony; and that the prosecutors, Will Feland and Larry Cook, were guilty of prosecutorial misconduct. In support of the grounds for relief, McArthur presents an affidavit from his codefendant, Hawley, recanting his trial testimony and asserting that Sheriff Isaac and the prosecutors conspired to ensure that Hawley provided false testimony implicating McArthur in the murder despite Hawley's statements to the sheriff and the prosecutors that McArthur had not participated in a plan to steal Spence's truck and did not actively participate in Spence's murder.[1] Hawley further contradicts McArthur's own testimony and contends that the gun used in the murder did not belong to McArthur's father, but was a gun that Hawley had stolen from police and that the sheriff and the prosecutor manufactured evidence that he and McArthur had used this gun for target practice prior to the murder.

McArthur further contends that he has discovered new evidence consisting of two additional affidavits from alleged witnesses to Spence's murder, Larry Stephens and Jackie

---

[1] Hawley's affidavit was executed in August 2007, and according to an affidavit executed by McArthur's mother, Hawley did not forward his affidavit to McArthur's mother until October 30, 2015. There is no other explanation for Hawley's eight-year delay in disclosing this affidavit.

Carlin.[2] Stephens and Carlin provide identical affidavits which state that they were attending a party in "a field located a few miles off highway 31 on Hefner Road" and approached a road where they had heard people engaged in an argument. Carlin and Stephens further assert that, while they could not clearly see the three individuals involved in this argument, they were able to observe one of the three shoot another in the group and then force the third person at gunpoint to move the body. According to Stephens and Carlin, they were interviewed the following day by Deputy Sheriff Larry Jones and provided statements consistent with the facts set forth in their affidavits. Based on the affidavits of Hawley and the two alleged witnesses, McArthur contends that investigators, acting in concert with the two prosecutors, suppressed exculpatory evidence provided by these witnesses and suborned perjury.

The wrongful withholding of material exculpatory evidence from the defense is a violation of *Brady* and a ground for granting the writ. *Noble v. State*, 2015 Ark. 215, at 4, 462 S.W.3d 341, 345 (per curiam). Evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)). There are three elements of a Brady violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. *Id.* However, this court is not required to take claims of a Brady violation in a

---

[2] Carlin is currently incarcerated at Varner Unit where McArthur is also incarcerated.

coram nobis petition at face value without substantiation. *Ventress v. State*, 2015 Ark. 181, at 5, 461 S.W.3d 313, 316–17.

A claim of recanted testimony, standing alone, is not cognizable in an error coram nobis proceeding. *Wilson v. State*, 2016 Ark. 327, at 5, 499 S.W.3d 638, 640 (per curiam). This is because a coram nobis proceeding is not a means to contradict a fact already adjudicated. *Carter v. State*, 2016 Ark. 378, at 7, 501 S.W.3d 375, 381 (per curiam). Hawley's trial testimony and the testimony of other witnesses who observed Hawley and McArthur's behavior immediately after the murder supported the jury's determination that, rather than being coerced, McArthur had been a willing participant in the crime. Moreover, a stipulation from the defense and McArthur's testimony established that the gun belonged to McArthur's father.

The resulting lack of credibility of the affidavits from the two alleged witnesses to the murder therefore means that the affidavits fail to substantiate McArthur's claim based on Hawley's recanted testimony. The affidavits of these two alleged witnesses are highly questionable in that, among other things, there is no explanation why these two individuals failed to report the murder in the first instance and waited over fifteen years to come forward. Furthermore, the authorities did not become aware that Spence had been murdered until Spence's body was discovered by a hunter in an isolated area several hours after Stephens and Carlin had allegedly witnessed the commission of the crime. Since Stephens and Carlin failed to report the crime, they fail to explain how the sheriff was aware that they had been near the area where the murder had taken place such that the sheriff interviewed them on the following day.

Even assuming that Stephens and Carlin witnessed the murder and gave statements to the deputy sheriff, there is a distinction between fundamental error, which requires issuance of the writ, and newly discovered information, which might have created an issue to be raised at trial had it been known. *Hooper v. State*, 2015 Ark. 108, at 6, 458 S.W.3d 229, 233. To merit relief on a claim of a *Brady* violation, McArthur must demonstrate that the alleged withheld evidence would have prevented the rendition of the judgment had it been disclosed at trial. *Noble v. State*, 2014 Ark. 332, at 4, 439 S.W.3d 47, 50. McArthur's trial testimony and the testimony of a fellow inmate were consistent with the version of events that are set forth in the affidavits of Stephens and Carlin. The jury apparently did not believe McArthur's testimony or the corroborating testimony, and it is unlikely that testimony from these two witnesses, who did not take the trouble to report a murder, would have changed the outcome of the trial.

Other than the affidavits of Hawley and the two alleged witnesses, McArthur offers no substantiation for his claims that investigators and the prosecutor suppressed material exculpatory evidence outside McArthur's own conclusory claims. Conclusory claims concerning evidence omitted from the record are deficient as a basis for coram nobis relief and do not establish that there is a reasonable probability that the outcome of the proceeding would have been different if the State had disclosed any particular evidence to the defense. *Carter*, 2016 Ark. 378, at 7, 501 S.W.3d at 381.

In his sixth ground for relief, McArthur contends that the presiding judge was biased because, according to McArthur, the judge's son dated the victim's cousin and was a member of the same church as that of the victim's family. To state a ground for the writ

on the basis of judicial bias, a petitioner must show that there was a reasonable probability that he or she would not have been convicted if an unbiased judge had served, and an allegation of the mere appearance of impropriety is not sufficient. *Chatmon v. State*, 2015 Ark. 417, at 3–4, 473 S.W.3d 542, 545–46 (per curiam). A petitioner does not make the necessary showing of fundamental error to support relief when there is no demonstration of actual bias. *Id*. The mere fact that some rulings were adverse to a defendant is not enough to demonstrate actual bias. *Brown v. State*, 2012 Ark. 399, at 5, 424 S.W.3d 288, 292. Moreover, in coram nobis proceedings, a petitioner must demonstrate that the judge's bias manifested in a manner that was hidden and could not have been challenged at the time of trial. *See Chatmon*, 2015 Ark. 417, at 3–4, 473 S.W.3d at 545–46. (noting that to the extent that the court's denial of the motion for new counsel demonstrated bias, the issue was not one that was hidden and was addressed by the trial court).

McArthur's claim of judicial bias is based on allegations that the trial court made a series of adverse rulings, including the denial of a motion for a change of venue; the exclusion of the deposition of Dr. Marino, a psychiatrist who evaluated Hawley; the refusal to grant a mistrial; and by allegedly providing improper jury instructions. The trial court's rulings on change of venue and the exclusion of Dr. Marino's deposition were issues raised at trial and affirmed on appeal. *McArthur*, 309 Ark. at 201–05, 830 S.W.2d at 844-46. The remainder of McArthur's judicial-bias allegations also consist of matters that were not extrinsic to the record. McArthur's judicial-bias claim is nothing more than a claim of trial court error, which is not cognizable in a coram nobis proceeding. *Johnson v. State*, 2015 Ark. 170, at 5, 460 S.W.3d 790, 794 (per curiam). By their very nature, claims of trial error

could have been settled at trial and on the record on direct appeal; therefore, allegations of trial error, even if of constitutional dimension, are not within the purview of a coram nobis petition. *Id*.

McArthur next claims ineffective assistance of counsel as grounds for coram nobis relief. Claims of ineffective assistance of counsel are not cognizable in a coram nobis proceeding. *Matthews v. State*, 2016 Ark. 447, at 3–4, 505 S.W.3d. 670, 673 (per curiam). Such claims are properly brought pursuant to Arkansas Rule of Criminal Procedure 37.1. A petition for writ of error coram nobis is not a substitute for proceeding under Rule 37.1. *Id*. This holds true even when the deadline for filing for Rule 37 relief has passed, as fundamental fairness and due process do not require an unlimited opportunity to proceed under Rule 37.1. *Id.*

McArthur's remaining claims include the following: that he was discriminated against because a second attorney had not been appointed to represent him in a capital case; that he was convicted of capital murder without being found guilty of the underlying felony;[3] that he has been denied due process because there is no remedy in the State of Arkansas for an inmate who discovers new evidence after conviction that is not scientific in nature; and that he had been precluded from assisting his attorney in a meaningful way due to his being denied access to a law library while in custody.

---

[3] The record demonstrates that the jury was instructed in accordance with AMI Crim. 1501-A, that a finding of capital murder must be based on a determination that McArthur had committed the crime of robbery and that if the crime of robbery had not been proved then McArthur could not be found guilty of capital murder.

These claims for relief are not cognizable in coram nobis proceedings. As stated above, the function of the writ of error coram nobis is to secure relief from a judgment rendered while there existed some fact that would have prevented its rendition if it had been known to the trial court and which, through no negligence or fault of the defendant, was not brought forward before rendition of the judgment. *Robert*s, 2013 Ark. 56, at 11, 425 S.W.3d at 778. McArthur has the burden of demonstrating a fundamental error of fact extrinsic to the record. *Id.* Constitutional issues such as due-process and equal-protection claims that could have been addressed at trial are not within the purview of the writ. *Wallace v. State*, 2015 Ark. 349, at 11–12, 471 S.W.3d 192, 199–200 (per curiam). An issue that was known at the time of trial and could have been addressed is not one cognizable in an error coram nobis proceeding. *Anderson v. State*, 2012 Ark. 270, at 5–6, 423 S.W.3d 20, 25–26 (per curiam). Regarding McArthur's claim that he has been denied due process with respect to presenting new evidence in claims for postconviction relief, we have noted that there is no constitutional right to a postconviction proceeding. *Roberts v. State*, 2013 Ark. 57, at 12, 426 S.W.3d 372, 378.

Petition denied.