James Edwin CLARK *v.* STATE of Arkansas

CR 86-179                                         727 S.W.2d 853

Supreme Court of Arkansas
Opinion delivered April 27, 1987

*Hanks, Gunn & Borgognoni*, by: *Mary Ann Gunn*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Blake Hendrix*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. James Edward Clark, appellant, was charged along with Louis Ricarte and Terry Brannen with three counts of aggravated robbery, three counts of kidnapping and with two counts of theft of property. The cases were severed and Clark was convicted on each count resulting in sentences totaling 135 years. Three points for reversal are presented on appeal: (I)

The trial court erred in submitting the three counts of kidnapping to the jury as Class "Y" felonies; (II) The courtroom identification of the appellant was tainted by suggestive photographic lineups prior to trial; and (III) The trial court abused its discretion by admitting evidence of a prior conviction of the appellant during cross-examination of a witness for the defense. We affirm the judgment of conviction.

At around nine o'clock on the evening of March 2, 1982 Robert Perry was accosted by three men as he parked in the driveway of his Fayetteville home. One of them said, "This is a robbery. Be quiet and go in the house." Perry, his wife and son were blindfolded and Perry was taken upstairs where he spent much of the night talking with one of the robbers. He was questioned about safes in the home and at a local jewelry store belonging to the Perrys.

Early next morning Perry was taken downstairs where Mrs. Perry and Hoyt Perry were handcuffed to a column in the garage. Perry and the three men went to the jewelry store where Perry opened a safe and the robbers removed the contents and left the store, leaving Perry handcuffed to a banister where he remained until employees arrived at nine o'clock to open the store. Robert Perry estimated the value of property taken in the robbery at $575,000.

I.

The trial court instructed the jury in accordance with Ark. Stat. Ann. § 41-1702(2) (Repl. 1979) that kidnapping is a Class Y felony, except when the victim is voluntarily released alive in a safe place then it is a Class B felony. The jury fixed the sentences for kidnapping according to Class Y felonies.

Clark contends that these kidnappings were Class B felonies as a matter of law and the jury should not have been permitted to determine which of the two classes of felony applied. We disagree.

The simple fact is the Perrys were not released at all. While it can be argued the Perrys were left in safe places — their home and store — it is not open to argument that they were not released. It is undisputed that they were left handcuffed to immovable structures and thus dependent on being discovered

and freed before their release was complete. Under these circumstances it was, at best, a fact question for the jury to decide as to which of the kidnapping felonies applied. *Whitt v. State*, 281 Ark. 466, 664 S.W.2d 876 (1984).

## II.

Appellant's second point for reversal involves his in-court identification by the Perrys as being one of the three robbers. Clark submits the identification should have been suppressed as unreliable and induced by suggestive police procedures. We reject the argument.

The Perrys identified Clark as the oldest of the three men and the one they referred to as "No. 1." On two occasions they were shown photographic lineups which included Clark's photograph. Mrs. Perry identified Clark in both instances, Mr. Perry in one. Both were positive in their identification. They had some 20 to 30 minutes to observe Clark before being blindfolded and in Mr. Perry's case he talked with the robber during the night in an upstairs bedroom. He said the man had an unusual voice, like that of actor Richard Boone of the television series, "Paladin." He maintained that it was Clark's voice he heard the night of the robbery.

In determining whether in-court identifications are permissible we look to various factors bearing on the reliability of the witness's knowledge: the opportunity to observe the perpetrator; the passage of time between the crime and the identification; any discrepancies between the description as reported to the police and the true characteristics of the defendant; the degree of certainty of the witness; and any other factors affecting the identification. *Penn v. State*, 284 Ark. 234, 681 S.W.2d 307 (1984). Here there is no basis for prohibiting the witnesses from identifying the man they believe to be the perpetrator. While there were some discrepancies in the Perrys' original description — they thought "No. 1" was several inches taller than Clark — that is hardly sufficient to suppress an identification. Indeed, the accuracy of their identification of Clark was dramatically corroborated by one of the principals, Terry Brannan, who testified for the state under immunity that Clark was one of three robbers. Clark's argument that the photo lineups were suggestive because in one he was pictured in front of a blue background whereas the

other two were in front of a brown background, is of no consequence. The photos are in the record and demonstrate the lack of suggestiveness.

### III.

Clark's final point is that the trial court erroneously permitted the state to introduce evidence of a prior conviction of Clark over the objection of the defense. There was no error.

Clark's wife, Tommie Lou Clark, was a witness in behalf of her husband. During defense counsel's questioning of Mrs. Clark she was asked, "Is there any doubt in your mind that Jim Clark did not commit this crime?" When she shook her head in the negative she was asked why she felt that way. She said, "I just don't feel he would do anything like that. He's too well educated, too intelligent a man to do something like that."

On cross-examination the prosecutor asked (R. p. 999):

Q: Mrs. Clark, I believe you told [defense counsel] that you didn't think Jim had done that and that was because he wouldn't do something like that?

A: No.

Q: What do you mean by that?

A: Well, that's committing a crime.

Q: You don't think he'd commit a crime?

A: No, I don't.

Q: Would it surprise you to learn that he committed a crime in Louisiana, that marijuana he got caught with and sentenced for?

A: It surprised me.

Q: It surprised the heck out of you, I imagine?

A: Right.

Q: Wasn't it a hundred and something pounds — ?

[Defense Counsel]: Objection, Your Honor.

Aside from the fact that no ruling was ever made on the

objection, the questions asked on direct examination clearly put the character of the accused in issue and enabled the state to test the witness's knowledge of facts bearing on her opinion of the character of the accused. *Reel* v. *State*, 288 Ark. 189, 702 S.W.2d 809 (1986).

The judgment is affirmed.