SLIP OPINION

Cite as 2017 Ark. 277

# SUPREME COURT OF ARKANSAS

No. CR–16-1125

|  |  |
|---|---|
| GEORGE KENNEDY CAGE<br><div align="right">APPELLANT</div> | **Opinion Delivered:** October 12, 2017 |
| V. | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-13-107] |
| STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | HONORABLE BERLIN C. JONES, JUDGE |
|  | <u>AFFIRMED</u>. |

**JOHN DAN KEMP, Chief Justice**

Appellant George Kennedy Cage appeals an order of the Jefferson County Circuit Court convicting him of capital murder and first-degree murder and sentencing him to two consecutive life terms. For reversal, Cage argues that the circuit court erred in finding him competent to stand trial and in refusing to instruct the jury on a mental disease or defect. Pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2016), we have jurisdiction because the jury imposed a sentence of life imprisonment without parole. We affirm.

## I. *Facts*

On January 19, 2013, at approximately 2:40 p.m., police officers were dispatched to a Pine Bluff residence because of a domestic disturbance. The dispatching operator advised that the caller, later identified as Cage, stated that he had "shot" his wife. The officers arrived at the scene and took Cage into custody. Deputy David Walker placed Cage in the patrol car, and Cage stated that he did not mean to kill his wife, whom he identified as

Mendi Bell. Investigator Randy Jackson met with Cage at the Jefferson County Sheriff's Criminal Investigation Division where the investigator advised him of his *Miranda* rights. Cage waived those rights in writing and agreed to give a statement.

During the interview, Cage stated that he had been playing a video game that day while his stepson, William Dykes, repaired some speakers in a car outside. Dykes walked inside the residence and began playing the video game with Cage. According to Cage, a character in the video game used a racial slur. Cage, who is an African American, told Dykes, a white male, not to use any racial slurs in the streets because he could get hurt or killed. At that time, Cage's wife, a white female, walked into the room and told him not to speak to her son in that manner. Cage told Bell, who was pregnant with his child, that she would have problems because their baby was biracial. Cage claimed that he tried to counsel Dykes, who had used racial slurs in the past. Cage stated that the discussion with his wife became heated, and he called his aunt to purchase a bus ticket so he could leave. Cage walked into the kitchen. Bell followed and called Cage a "no good sorry motherfucker" and stated that he "had not done anything to contribute around the house." Cage claimed that he "snapped," grabbed a kitchen knife, turned toward Bell, and began stabbing her in the face, neck, and back as she ran out the door. Bell asked Dykes to take her to the hospital, and Cage helped Bell get into the vehicle. Cage stated that he returned to the residence, grabbed his handgun, and called the sheriff's dispatch number. During the call, he stated, "I just killed my wife. I'm sorry. . . . I just started stabbing her. I stabbed her. . . . I did not mean to hurt her."

2

That afternoon, on January 19, 2013, Investigator Kaleisha Wise interviewed Dykes at Jefferson Regional Medical Center. Dykes stated that he witnessed Cage stab his mother as she exited the front door. He stated that his mother fell to the ground, stood up, and began bleeding profusely. According to Dykes, Cage went into the residence, retrieved Bell's cell phone and keys, tossed them to Dykes, and told him to call 911. When Dykes attempted to get some towels, he realized that Cage had locked the door to the residence. Dykes called his sister, Elizabeth Jackson, who then called 911. Bell and her unborn fetus later died as a result of her stab wounds.

On February 26, 2013, the State filed an amended felony information charging Cage with capital murder of his unborn child and first-degree murder of his wife. Subsequently, on July 31, 2013, Cage filed a motion for commitment to the Arkansas State Hospital to determine whether, as a result of mental disease or defect, he lacked capacity at the time of the offense. The circuit court granted Cage's motion and ordered him to be committed to the Arkansas State Hospital for a period not to exceed thirty days, ordered a medical opinion on Cage's ability to form a culpable mental state, and requested that the results of the testing be provided to the circuit court. In January 2014, Dr. Mark M. Peacock evaluated Cage and found that Cage suffered from schizophrenia and was unfit to proceed to trial; that he did not have the capacity to understand the proceedings against him; and that he lacked the capacity to assist fully and effectively in his defense. Dr. Peacock did not opine on Cage's mental state when he committed the offense. The State responded, and the circuit court entered a not-fit-to-proceed commitment order and committed Cage to the custody of the Arkansas Department of Human Services for detention, care, and treatment until restoration

of fitness to proceed. At the state hospital, Cage received medication and therapy for schizophrenia. Later that year, on November 5, 2014, Cage underwent a second evaluation by Dr. Jason Beaman, who found Cage fit to proceed to trial. Dr. Beaman found that, after having received medication and therapy at the state hospital, Cage possessed the ability to understand the proceedings against him, possessed the ability to assist in his defense, and accepted responsibility for his actions. Cage was discharged from the state hospital in December 2014.

The State then filed a motion for determination of Cage's fitness to proceed to trial, which the circuit court granted. On February 29, 2016, per the circuit court's order, Dr. Peacock performed an evaluation to determine Cage's competency. He stated that he had previously attempted to evaluate Cage, who presented with poor grooming and hygiene, but Cage refused to participate. Dr. Peacock noted that Cage had been receiving intramuscular injections of haloperidol, and his discharge documents from his previous hospitalization at the state hospital "indicated psychiatric stability." Dr. Peacock stated that Cage's "ongoing medication regimen and compliance would support the likelihood of psychiatric stability across time." Dr. Peacock opined that Cage's "refusal to cooperate with the evaluation was deliberate and not a result of substantially impairing mental disease or mental defect." He further noted that Cage had "been described as cooperative with his haloperidol injections . . . and simply appeared unwilling to talk with me." Dr. Peacock concluded that Cage was fit to proceed to trial. On July 6, 2016, the circuit court held a competency hearing. On July 18, 2016, the circuit court entered an order denying Cage's


motion, finding that "[h]aving considered the evidence submitted to the court, the court is of the opinion that [Cage] is fit to proceed to trial."

The case proceeded to a jury trial after the circuit court denied Cage's request for a bench trial. After the State's case-in-chief, the defense called Dr. Jason Beaman, by way of video deposition, who testified that he found Cage fit to proceed to trial and that he did not suffer from a mental disease or defect at the time of the offense. Dr. Beaman testified that he diagnosed Cage with antisocial personality disorder but that "it could be" schizophrenia if he was "not willing to speak to anyone." He also stated that Cage's diagnosis of schizophrenia had been treated and that he did not display certain symptoms anymore. The jury found Cage guilty of capital murder of an unborn person and first-degree murder of Bell and sentenced him to life imprisonment without parole for capital murder and life imprisonment for first-degree murder. Cage now brings his appeal.

## II. *Competence to Stand Trial*

For the first point on appeal, Cage argues that the circuit court erred in finding that he was competent to stand trial. Specifically, Cage points to his counsel's testimony at a pretrial hearing that Cage was not able to assist in the preparation of his defense; that Cage did not understand why he was at the hearing; and that Dr. Peacock had not spent enough time with him when diagnosing him with schizophrenia.

The conviction of an accused person while he or she is legally incompetent violates due process. *See Jacobs v. State*, 294 Ark. 551, 744 S.W.2d 728 (1988) (citing *Pate v. Robinson*, 383 U.S. 375 (1966)); *see also* Ark. Code Ann. § 5-2-302 (Repl. 2013). This court has long held that criminal defendants are presumed to be competent to stand trial and that they have

the burden of proving otherwise. *Thessing v. State*, 365 Ark. 384, 230 S.W.3d 526 (2006). This court has defined the test of competency to stand trial as "whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him." *Haynes v. State*, 346 Ark. 388, 392, 58 S.W.3d 336, 339 (2001).

The test for competency on appeal is whether substantial evidence supports the circuit court's finding. *Baumgarner v. State*, 316 Ark. 373, 872 S.W.2d 380 (1994). We have defined substantial evidence as "that which is forceful enough to compel reasonable minds to reach a conclusion one way or another and requires more than mere speculation or conjecture." *Mauppin v. State*, 314 Ark. 566, 568, 865 S.W.2d 270, 271 (1993). When determining whether there was substantial evidence to support a circuit court's ruling regarding competency, "[i]t is permissible to consider only the testimony which supports a finding" of competency. *Id.*, 865 S.W.2d at 271.

On appeal, our inquiry is whether substantial evidence supports the circuit court's finding. For the following reasons, we conclude that it does. First, the circuit court made its own assessment of Cage's competency "after considering the evidence submitted to the court." The circuit court noted in its fitness-to-proceed order that it had heard testimony from Dr. Peacock and Cage and that it had the opportunity to observe Cage. Second, the circuit court relied on reports prepared by Dr. Peacock and Dr. Beaman and "reviewed the forensic examinations [that] were performed January 7, 2014, November 5, 2014 and the memorandum from Mark Peacock dated February 29, 2016." Further, both Dr. Peacock and Dr. Beaman had conducted posttreatment exams of Cage, and both doctors had

concluded that Cage was competent to stand trial. Dr. Peacock's report alone provides substantial evidence to support the circuit court's finding of competency. *See Carrier v. State*, 278 Ark. 542, 544, 647 S.W.2d 449, 450 (1983) (holding that the psychiatric report of the state hospital finding the appellant to be "fit and responsible" was substantial evidence to support the circuit court's competency finding). Thus, for these reasons, we hold that the circuit court did not err in determining that Cage was competent to stand trial, and we affirm the circuit court's ruling.[1]

### III. *Jury Instructions*

For the second point on appeal, Cage argues that the circuit court erred in refusing to instruct the jury on his mental state at the time of the offense. Cage contends that the circuit court erred in refusing to give his proffered jury instructions, AMI Crim. 2d 609 and 610, on what constitutes a mental disease or defect and urges this court to reverse the circuit court's ruling.

A party is generally entitled to an instruction on a defense if there is sufficient evidence to raise a question of fact or if there is any supporting evidence for the instruction. *Davis v. State*, 293 Ark. 472, 739 S.W.2d 150 (1987). Mental disease or defect is an

---

[1]      In his brief to this court, Cage presents another argument that the circuit court's statement concerning his request for a bench trial indicated that the "judge . . . wasn't sure he was competent enough to waive a jury trial." At the hearing, the circuit court denied his request for a bench trial and stated, "With schizophrenia and the way it can work in and out, before the court would permit that [a bench trial], the court would need a full-blown hearing." Cage did not request such a hearing. Further, the circuit court stated, "He has a right to a jury trial. He doesn't have a right to a bench trial. . . . And the court is not prepared to go forward with a bench trial in a capital murder case." The Supreme Court of the United States has stated there is no right to a bench trial. *See Singer v. United States*, 380 U.S. 24, 37–38 (1965). Thus, we cannot say that the circuit court erred in its ruling.

SLIP OPINION

SLIP OPINION

affirmative defense, and the burden rests upon the appellant to prove that, at the time the defendant engaged in the conduct charged, he or she lacked the capacity to conform his or her conduct to the requirements of the law or to appreciate the criminality of his or her conduct. Ark. Code Ann. § 5-2-312(a) (Repl. 2013). The standard of review regarding the use of jury instructions is abuse of discretion. *Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999).

Cage's proffered jury instructions included AMI Crim. 2d 609, which states in relevant part,

> Defendant asserts the affirmative defense of mental disease or defect. If, after considering all the evidence, you are convinced beyond a reasonable doubt that defendant engaged in the conduct alleged to constitute the offence, you should then consider the defense of mental disease or defect.
>
> A person is not criminally responsible for his conduct if at the time of that conduct, as a result of mental disease or mental defect, he lacked the capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.
>
> Defendant has the burden of proving the defense by a preponderance of the evidence, unless the defense is so proved by other evidence in the case.

Further, AMI Crim. 2d 610 states,

> If you find that the defense of mental disease or defect has not been established, evidence that defendant suffered from a mental disease or defect may still be considered by you in determining whether defendant had the required mental state to commit the offense charged.

Here, at trial, the circuit court provided the following rationale for its denial of Cage's request for these jury instructions when it stated,

> We don't have anything in the record to whereby [sic] any of the professionals or expert witnesses testified that he had a mental disease or defect at the time of the occurrence. . . . [T]his court is not allowed to speculate. This court must rely upon evidence in the record. And, as we speak, it is not in the record that this defendant,

at the time of the occurrence . . . was experiencing any mental disease or defect that would have rendered him incapable of appreciating the criminality of his conduct or of reforming his conduct to that which is expected of the law.  In fact, I believe the doctor testified that it was just the opposite. . . . Therefore, the court would deny the defendant's motion that AMCI 2d 609 and the subsequent 610 be submitted as jury instructions.

The defense's own witness, Dr. Beaman, testified that he reviewed Dr. Peacock's finding of schizophrenia and agreed with it.  Dr. Beaman emphasized that once Cage received treatment, "his schizophrenia was in a treated state and any lack of cooperation was volitional."  More significant, Dr. Beaman opined that "at the time of the crime [Cage] did not have a severe mental disease or defect."  Dr. Beaman stated that he based his opinion on his evaluation, Cage's admission that he had no prior history of mental illness, a lack of prior medications, and a review of the police records, including the officer's probable-cause and video statements. Cage presented no supporting evidence for the instructions. Based on this testimony, we hold that the circuit court did not abuse its discretion in refusing to give the AMI Crim. 2d 609 and 610 instructions. Accordingly, we affirm the circuit court's ruling on this point.

## IV. *Rule 4-3(i)*

In compliance with Arkansas Supreme Court Rule 4–3(i), we have examined the record for all objections, motions, and requests made by either party that were decided adversely to Cage, and no prejudicial error has been found.

Affirmed.

*Joseph C. Self*, for appellant.
*Leslie Rutledge*, Att'y Gen., by:  *Adam Jackson*, Ass't Att'y Gen., for appellee.