Cite as 2024 Ark. 130

# SUPREME COURT OF ARKANSAS
No. CR–23–197

| | |
|---|---|
| CHRISTOPHER SEGERSTROM<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** September 19, 2024<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CR–86–583A]<br><br>HONORABLE MARK LINDSAY, JUDGE<br><br><u>AFFIRMED</u>. |

**BARBARA W. WEBB, Justice**

Christopher Segerstrom appeals from the life sentence imposed by a Washington County jury at a resentencing hearing after his original sentence of life imprisonment without parole was vacated pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012). On appeal, Segerstrom argues that the circuit court committed reversible error by (1) ruling that he was fit to proceed to trial; (2) denying his request for a continuance on the day of trial; (3) granting the State's motion to admit prior trial testimony; and (4) rejecting his nonmodel jury instruction. We affirm.

## I. *Background*

Segerstrom was convicted of capital murder and sentenced to life imprisonment for the 1986 murder of four-year-old Minor Victim. Segerstrom was fifteen years old at the time. This court affirmed on direct appeal. *Segerstrom v. State*, 301 Ark. 314, 783 S.W.2d 847 (1990).

In 2012, the United States Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479. The Court added that juvenile offenders who committed homicide crimes and faced a sentence of life without parole were entitled to a sentencing hearing that would permit a judge or jury to consider the individual characteristics of the defendant and the individual circumstances of the crimes as mitigating factors for a lesser sentence. *Id*. at 489; *Robinson v. State*, 2018 Ark. 353, at 2, 563 S.W.3d 530, 531.

Thereafter, Segerstrom's sentence was vacated and remanded to the Washington County Circuit Court for resentencing. Without a hearing, the circuit court sentenced Segerstrom to life imprisonment with the possibility of parole after thirty years. He appealed, and this court reversed and remanded, holding that Segerstrom was entitled to a hearing to present *Miller* evidence for consideration and sentencing within the discretionary range for a Class Y felony, which is ten to forty years, or life. *Segerstrom v. State*, 2019 Ark. 36, 566 S.W.3d 466.

Upon remand, Segerstrom filed a notice of intent to raise his fitness to proceed under Arkansas Code Annotated sections 5-2-301 et seq. The circuit court stayed proceedings and ordered an examination of Segerstrom. Arkansas State Hospital (State Hospital) psychologist Dr. Lacey Willett examined Segerstrom and opined that he was unfit to proceed to trial due to mental disease, namely schizophrenia. Accordingly, the circuit court entered an order declaring Segerstrom unfit to proceed and committing him to the State hospital for treatment and observation until his fitness to proceed was restored.

After Segerstrom spent nearly a year at the State Hospital, the circuit court received notice that Segerstrom had been deemed fit for sentencing. Dr. Melissa Wright, a State Hospital psychologist, submitted a forensic evaluation opining that Segerstrom did not have a mental disease or defect and satisfied only the criteria for an antisocial personality disorder. As such, she concluded that Segerstrom could proceed to trial. Segerstrom subsequently hired a psychologist, Dr. Benjamin Silber, who opined that Segerstrom remained unfit due to a schizophrenia diagnosis.

The circuit court held a competency hearing on January 12, 2022. Dr. Willett testified to her initial evaluation finding Segerstrom unfit. She stated that, as part of her evaluation, she reviewed Segerstrom's records from the Arkansas Department of Correction, Ozark Guidance Center, and the Arkansas Baptist Children's Home. She stated that she administered the "Mini Mental State Exam–Second Edition" to measure Segerstrom's current mental status and, to assess his fitness to proceed, administered the "Evaluation of Competency to Stand Trial–Revised" (ECST-R). After performing these tests, Dr. Willett diagnosed Segerstrom with schizophrenia and antisocial personality disorder. Dr. Willett explained that she did not administer a malingering test because Segerstrom's reported delusions were consistent with past records.

Dr. Willett further explained that she reached her conclusion that Segerstrom was unfit not because his understanding of the legal proceedings against him was impaired but instead due to concern over his ability to assist in his defense. She believed that Segerstrom's delusions had a direct bearing on his case and his ability to testify in a cogent manner. On cross-examination, Dr. Willett agreed that defendants committed to the State Hospital

typically have their fitness restored. She also admitted that she had not evaluated Segerstrom since his commitment.

Dr. Silber testified that he had reviewed Segerstrom's case-file records and the reports of Drs. Willett and Wright. He also administered the ECST-R, the "Miller Forensic Assessment of Symptoms," the "Test of Memory Malingering," and the "Weschler Adult Intelligence Scale." Dr. Silber also diagnosed Segerstrom with schizophrenia and antisocial personality disorder. He also provisionally diagnosed Segerstrom with intellectual disability.

Regarding fitness, Dr. Silber agreed with Dr. Willett's assessment that Segerstrom understood the court system and the factual nature of his case. But Dr. Silber stated that he nevertheless concluded that Segerstrom's schizophrenic delusions rendered him unfit for sentencing. Dr. Silber agreed on cross-examination that Segerstrom has a documented history of manipulating his behavior for his own benefit but did not believe Segerstrom was malingering. He explained that Segerstrom had maintained a consistent set of delusional beliefs for years.

Dr. Wright testified that Segerstrom was fit to proceed on the basis of her review of case-file records, discussions with his treatment team at the State Hospital, and the results of his ECST-R. She diagnosed Segerstrom with antisocial personality disorder but opined that Segerstrom possessed a factual, rational understanding of the proceedings against him and that he possessed the capacity to assist his attorney. Dr. Wright testified that there was no evidence that Segerstrom suffered from a psychotic disorder like schizophrenia. She noted that Segerstrom often engaged in manipulative behavior to get what he wanted. Dr. Wright

4

explained that she did not test Segerstrom for malingering because he was cooperative and did not mention any delusions during their interview.

At the conclusion of testimony, the circuit court directed the parties to submit post-hearing briefs. On March 7, 2022, the circuit court entered an order finding Segerstrom fit to proceed, crediting Dr. Wright's testimony and report.

On the day of the resentencing hearing, defense counsel renewed the fitness-to-proceed motion. Counsel alleged that Segerstrom had been injected with Haldol, a drug used to treat schizophrenia, and as a result, Segerstrom became "unresponsive" to their communications. In response, the State asserted that the court had already decided the fitness-to-proceed issue. The circuit court denied the motion, commenting that "everybody knew today was the day, and if [Segerstrom] got injected and it affects him in some way, then it shouldn't have been done." But the circuit court observed that Segerstrom "appear[ed] to be awake" and that "he's been communicating—not really communicating but I've heard his presence in the holding cell."

Defense counsel then moved for a continuance, alleging Segerstrom was "unable to communicate" and was "not able to properly assist counsel." The circuit court replied that counsel was "not capable of giving [it] medical testimony." Counsel offered to call a doctor to testify but was unable to say when the doctor would be available. The circuit court stated Segerstrom could "waive his presence to be here while the jury is being chosen, and then you can find out how long it will be before he is capable. But we're going to go ahead and choose the jury this morning." Counsel responded that Segerstrom wished to be present, and the hearing proceeded.

5

During resentencing, the State moved to admit the testimony of Dr. Joseph Halka under Rule 804(b)(1), the hearsay exception for former testimony. Dr. Halka had performed MV's autopsy and had testified at Segerstrom's original trial in 1987. Segerstrom objected, contending that the defense at his original trial did not have the same motive to cross-examine Dr. Halka as the defense at resentencing. Defense counsel suggested that the defense would question Dr. Halka about the sophistication of the crime and whether the killing was a reckless, impulsive act.

The circuit court asked defense counsel if Dr. Halka testified to anything beyond the cause of death, to which counsel conceded he did not. The circuit court responded, "Then, you have no other motive. [Dr. Halka's] testifying to the same thing then that obviously his testimony will be the same because it's a transcript." The circuit court further stated that Dr. Halka could not testify as to the sophistication of the crime. The circuit court granted the State's motion and admitted Dr. Halka's testimony.

At the conclusion of evidence, Segerstrom proffered a jury instruction based on language in *Miller*. The instruction provided that "[j]uveniles are constitutionally different from adults for purposes of sentencing" and that "Segerstrom may not be sentenced without consideration of his special circumstances, in light of the principles and purposes of juvenile sentencing." As such, the instruction provided that the jury "must take into account how children are different and how those differences counsel against irrevocably sentencing them to a lifetime in prison."

The circuit court rejected Segerstrom's proffered instruction, reasoning that it conflicted with the model instructions because it instructed jurors that they "must take into

account" the differences between juvenile and adult offenders. It explained that the model instructions provide that the jury is the sole judge of the weight of the evidence and the credibility of the witnesses. The jury subsequently sentenced Segerstrom to life imprisonment. Segerstrom now appeals.

II. *Discussion*
A. Fitness to Proceed

Segerstrom first argues on appeal that the circuit court erred by finding him fit to proceed. He points specifically to the conflicting testimony of the expert witnesses and contends that the circuit court failed to consider whether he could assist in his own defense.

We have long held that criminal defendants are presumed competent to stand trial, and they have the burden of proving otherwise. *Hampton v. State*, 2020 Ark. 344, at 6, 609 S.W.3d 393, 396. The test for competency to stand trial is whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual, understanding of the proceedings against him. *Id.*

The test for competency on appeal is whether substantial evidence supports the circuit court's finding. *Cage v. State*, 2017 Ark. 277, at 6, 528 S.W.3d 825, 828. When determining whether there is substantial evidence, it is permissible to consider only the testimony that supports a finding of competency. *Id.* Importantly, following a circuit court's ruling on competency to stand trial, we will not attempt to weigh the evidence or pass on the credibility of witnesses when the medical reports conflict with each other. *Thessing v. State*, 365 Ark. 384, 390, 230 S.W.3d 526, 532 (2006). With regard to dueling medical experts, we have explained that the trier of fact observes the witnesses firsthand, sees their

7

demeanor and responsiveness in answering questions, and is in the best position to determine which is the more credible witness. *Hampton*, 2020 Ark. 344, at 7, 609 S.W.3d at 396.

Here, Segerstrom essentially asks us to reweigh the medical experts' testimony, which, as noted above, this court will not do. Dr. Wright explained that Segerstrom was fit to proceed on the basis of her review of relevant records, discussions with the State Hospital treatment team, and the results of Segerstrom's ECST-R. She opined that Segerstrom did not suffer from mental disease or defect, that Segerstrom possessed a factual and rational understanding of the criminal proceedings against him, as well as the capacity to rationally assist in his own defense and communicate with his attorney. Dr. Wright's report and testimony provided substantial evidence to support the circuit court's ruling. As such, the circuit court did not err in crediting Dr. Wright's testimony and finding that Segerstrom was fit to stand trial.

## B. Continuance

Segerstrom next challenges the circuit court's denial of his continuance motion on the day of his resentencing hearing. The decision to deny a continuance is within the sound discretion of the circuit court and will not be disturbed absent a clear abuse of that discretion. *McCauley v. State*, 2023 Ark. 68, at 5, 663 S.W.3d 383, 386. An appellant must establish that the circuit court abused its discretion and show that the decision resulted in prejudice amounting to a denial of justice. *Id*. A continuance should be granted only upon a showing of good cause. Ark. R. Crim. P. 27.3.

Counsel moved for a continuance the morning of resentencing in response to the allegation that Segerstrom had been injected with the drug Haldol, rendering him unable

to communicate with counsel. Counsel stated that Segerstrom was not fit to proceed at that time. But the circuit court had already found Segerstrom fit to proceed when it credited Dr. Wright's testimony and report, which included the opinion that Segerstrom engaged in manipulative behavior for his own benefit. Further, counsel failed to adduce any evidence to support his allegation, and this court will not presume prejudice when the appellant offers no proof of it. *Beard v. State*, 2022 Ark. 7, at 7, 636 S.W.3d 772, 775. Accordingly, the circuit court did not abuse its discretion by denying a continuance.

## C. Cause-of-Death Testimony

Segerstrom next argues that the circuit court erred by admitting Dr. Halka's trial testimony under the former-testimony exception to the hearsay rule.[1] Rule 804(b)(1) of the Arkansas Rules of Evidence sets out the hearsay exception for former testimony as follows:

> (b) *Hearsay Exceptions*. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

> (1) *Former testimony*. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

We have observed that the admission of prior testimony requires both the opportunity to cross-examine the witness and a similar motive to develop his or her testimony. *Dennis v. State*, 2016 Ark. 395, at 12, 503 S.W.3d 761, 769 (quoting *Bertrand v.*

---

[1]Segerstrom also argues that the admission of Dr. Halka's testimony violates the Sixth Amendment to the United States Constitution. This argument is waived for our review. *See Rayburn v. State*, 2021 Ark. 98, at 8, 622 S.W.3d 155, 161 ("[An appellant] is limited to the scope and nature of his [or her] arguments below and cannot raise new arguments on appeal.").

*State*, 363 Ark. 422, 425, 214 S.W.3d 822, 824 (2005)). And we have consistently held that (1) where the prior testimony was at a full-fledged proceeding, (2) where the motive to cross-examine was similar, and (3) where the witness was unavailable, the testimony is admissible under Rule 804(b)(1). *Id.*

Segerstrom urges that his motive for developing Dr. Halka's testimony at his resentencing hearing was not similar to his motive at his original trial. He argues that in 1987, his defense counsel had no concerns about introducing mitigating evidence because his sentence could not be mitigated—he could only be sentenced to life without the possibility of parole. Segerstrom indicates that he would have sought to identify mitigating evidence through cross-examination of Dr. Halka, such as evidence of Segerstrom's mental health history, as shown by the lack of sophistication of the crime. However, as the circuit court correctly noted, matters of Segerstrom's mental health and the sophistication of the crime are outside the scope of Dr. Halka's expertise as a medical examiner. Accordingly, the circuit court correctly admitted Dr. Halka's testimony under Rule 804(b)(1).

## D. Jury Instructions

For his final point on appeal, Segerstrom argues that the circuit court erred by refusing to give the jury a proffered instruction based on *Miller v. Alabama*. Segerstrom's proposed instruction required the jury to consider "how children are different and how those differences counsel against irrevocably sentencing them to a lifetime in prison."

A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Rickman v. State*, 2020 Ark. 138, 597 S.W.3d 622. The circuit court's decision to give or reject an instruction

10

will not be reversed unless the circuit court abused its discretion. *Id.* When the circuit court determines that the jury should be instructed on an issue, the model criminal instructions must be used unless the court concludes they do not accurately state the law. *Id.*

In *Miller*, the Supreme Court held that a *mandatory* sentence of life without parole for a juvenile violates the Eighth Amendment. 567 U.S. at 465. The Court did not prohibit a juvenile from being sentenced to life without parole, but required the sentencer to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. *Miller's* holding therefore has no bearing on sentences lower than life-without-parole sentences. *See also, e.g.*, *Hobbs v. Turner*, 2014 Ark. 19, at 11, 431 S.W.3d 283, 289 ("Turner was not subjected as a juvenile homicide offender to a mandatory life-without-parole sentence; therefore, *Miller* is inapplicable."). In this case, the jury was asked to resentence Segerstrom to a term of ten to forty years or to life with the possibility of parole after thirty years. Consequently, Segerstrom was not entitled to a jury instruction based on *Miller*. We hold that the court did not abuse its discretion when it refused to give Segerstrom's instruction.

III. *Rule 4-3(a) Review*

In compliance with Arkansas Supreme Court Rule 4-3(a), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Segerstrom. No prejudicial error has been found.

Affirmed.

*Mostyn Prettyman, PLLC*, by: *J. Benjamin Crabtree*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., for appellee.