Cite as 2025 Ark. App. 261

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-24-450

| | | |
|---|---|---|
| MINOR CHILD | APPELLANT | Opinion Delivered April 23, 2025 |
| | | APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT [NOS. 18JV-22-271; 18JV-23-102] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE TONYA M. ALEXANDER, JUDGE |
| | | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Minor Child (M.C.), d.o.b. June 9, 2010, was adjudicated delinquent for resisting arrest in case No. 18JV-22-271; she was also adjudicated delinquent for resisting arrest and for second-degree domestic battering in case No. 18JV-23-102. She was committed to the Division of Youth Services ("DYS") and ordered to complete the serious-offender program and to undergo mental-health treatment. She argues on appeal that the evidence was insufficient to support her delinquency adjudication for second-degree domestic battering and that the circuit court erred by denying her request for a forensic evaluation. We affirm.

M.C.'s delinquency hearing took place on March 4, 2024. At the onset of the hearing, M.C.'s counsel noted that he had "requested the ability to file a petition for forensic evaluation before these proceedings commenced[,]" and it was his understanding that the circuit court was

proceeding despite the objection. The circuit court responded that M.C. had already been evaluated, and M.C.'s counsel agreed.

Lee Townsend, Sr. ("Townsend Sr."), M.C.'s grandfather, testified that he lived at 544 Julia Street in West Memphis, Arkansas, in April 2023. He stated that on April 18, he called the West Memphi Police Department ("WMPD") because he and M.C. were tussling, and he sustained injuries as a result. He said that at the time, he was sixty-two years old. He stated that diesel fuel had spilled on him but that he believed it was an accident. He agreed that M.C. had hit him, causing his face to swell, and that he thought that there was a bite mark on him. He testified that M.C. has had outbursts like this before and since the time in question. On cross-examination, Townsend Sr. stated that his son, Lee Townsend, Jr. ("Townsend Jr."), had also tussled with M.C. earlier that day while attempting to discipline her. He opined that M.C. was trying to defend herself as Townsend Jr. attempted to "whoop her." On redirect, Townsend Sr. testified that Townsend Jr. was disciplining M.C. because she was talking loudly while cleaning her room. On recross, Townsend Sr. stated that M.C. got "pretty mad" when Townsend Jr. was disciplining her but that he did not believe Townsend Jr.'s actions were excessive.

Sergeant Blake Forthman of the WMPD testified that he was dispatched to 544 Julia Street on April 18 regarding a disturbance. He stated that when he arrived, Townsend Sr. was standing beside the bed of his truck and was handcuffed to M.C., who was inside the truck's bed. He said that Townsend Sr. informed him that M.C. was causing a disturbance and destroying items in the home. He testified that Townsend Sr. had a red mark on the right side of his face and a bite mark on his hand, which were caused by M.C. Sergeant Forthman stated that Townsend Sr. was over sixty years old on the day of the incident. He said that Townsend

2

Sr. was also wet from diesel fuel that M.C. had poured on him. He stated that M.C. resisted when he tried to arrest her. Specifically, he said that she "wrapped her legs around [his] legs, and grabbed [his] legs with her hands, and would not let [him] manipulate her to put her in cuffs." According to Sergeant Forthman, another officer had to assist him in getting M.C. to the police car.

Officer Kimbrough of the WMPD testified that he was working as a patrolman on December 15, 2022, when he was dispatched to 544 Julia Street concerning M.C. He stated that according to dispatch, M.C. was threatening her grandfather and refusing to go to school. He said that he instructed M.C. to put her clothes on and to come outside and talk to police officers, but she refused. He stated that he subsequently attempted to detain M.C., but she "started tensing up her arm and resisting the officers causing it to be hard to place her in handcuffs without incident without hurting anyone else." Officer Kimbrough said that they were finally able to place M.C. in handcuffs and get her outside but that she continued to struggle by jerking away from the officers and kicking at them. This behavior continued even after M.C. was placed in the patrol car. On cross-examination, Officer Kimbrough stated that M.C. was finally able to calm down in the patrol car.

M.C.'s counsel moved for dismissal of the domestic-battering charge following the State's case, arguing that "the State offered no proof as to [M.C.'s] intent in causing the injuries, the alleged injuries, that Mr. Townsend sustained." Counsel further contended that since Townsend Sr. testified that his injuries were sustained during a "brawl," "there's no guarantee and no way for this Court to know, beyond a reasonable doubt, that [M.C.] was purposefully or knowingly trying to [injure] him in anything she did." Regarding the resisting-arrest charges,

3

counsel argued that the State showed no proof of M.C.'s intent or mental state to support the charge. Counsel contended that the "proof has shown that she can have episodes where she acts out of control, and they have to show that she was knowingly doing the things that she was doing when these officers allege that she resisted the arrest attempts made by them." The circuit court denied the motions.[1]

M.C.'s counsel consulted with M.C. and decided not to put on a defense. He renewed the motions for dismissal, and the circuit court denied the motions concerning the resisting-arrest and domestic-battering charges and entered true findings against M.C. for those charges.[2]

Townsend Sr. testified during sentencing that M.C. is bipolar and that both of her parents are paranoia schizophrenic. He stated that M.C. was given a shot to prevent her from having AIDS while she was still in her mother's womb, and Townsend Sr. attributes most of M.C.'s behavior to that time. He said that he has raised M.C. since she was three months old and that her behavior goes from being sweet to "wanting to argue or something" in a short period of time. He stated that she has gone to at least six behavior-therapy institutes and that she was currently on medication. Townsend Sr. testified that M.C. was sexually assaulted at ten years old, resulting in a pregnancy. He stated that she subsequently had an abortion. On cross-examination, Towsend Sr. stated that M.C. does "good [in school], when she goes", and that she "is on track to graduate." He told the circuit court that M.C. "becomes unbalanced" when she does not take her medication. He stated that he believes that M.C.'s current behavior institute,

_____

[1]Dismissal motions were made for other charges against appellant also, leading the circuit court to dismiss a criminal-trespassing charge against M.C.

[2]The circuit court granted the motion to dismiss a disorderly-conduct charge against M.C.

4

Methodist, "know[s] what they're doing" in terms of finding medication that works for M.C. He said that M.C. is thirteen years old and that she has been involved with the juvenile system for four years. He testified that M.C. did not start having problems until she was sexually assaulted. He opined that M.C. is doing a lot better on her current medications. He asked that she be able to remain with him.

M.C.'s counsel asked for a less restrictive alternative to DYS custody. The State contended that DYS is the best place for M.C. The circuit court revisited M.C.'s counsel's request for, and its denial of, a forensic evaluation. The circuit court stated that it did not feel that M.C. could not assist her counsel, and it did not see any other issues given that M.C. is currently medicated. The circuit court found that M.C. needs intensive therapy and that DYS could provide her with that. The delinquency adjudication and DYS commitment order was filed on March 4. M.C. filed a timely notice of appeal on April 1.

M.C. argues that the evidence was insufficient to support her delinquency adjudication for second-degree domestic battering. In reviewing the sufficiency of the evidence in a delinquency case, we apply the same standard of review as in criminal cases; that is, we view the evidence in the light most favorable to the State, considering only the proof that tends to support the finding of guilt.[3] We will affirm if the adjudication is supported by substantial evidence, which is evidence that is of sufficient force and character to compel a conclusion one way or the other without resorting to speculation or conjecture.[4] A person commits second-degree

[3]*T.S. v. State*, 2017 Ark. App. 578, 534 S.W.3d 160.

[4]*Id.*

5

domestic battering by knowingly causing physical injury to a family or household member he or she knows to be sixty years of age or older.[5]  Domestic battering in the second degree is a Class C felony.[6]

At her adjudication hearing, M.C. argued that the State failed to prove that she intentionally, purposefully, or knowingly caused injuries to Townsend Sr.  However, on appeal, she contends that there was no evidence of physical injury to Townsend Sr. and that there was no evidence that she knew that Townsend Sr. was over sixty years of age.  The State notes, and we agree, that this is not the same argument M.C. made to the circuit court.  Because M.C. has changed her sufficiency challenge on appeal, it is not preserved for our review.[7]  Therefore, we affirm appellant's delinquency adjudication for second-degree domestic battering.[8]

As her second point, M.C. argues that the circuit court erred when it denied her request for a forensic evaluation at the beginning of her delinquency hearing.  Our courts have long held that criminal defendants are presumed competent to stand trial, and they have the burden of proving otherwise.[9]  The test for competency to stand trial is whether a defendant has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational

---

[5]Ark. Code Ann. § 5-26-304(a)(4) (Repl. 2013).

[6]Ark. Code Ann. § 5-26-304(b)(1).

[7]*Break v. State*, 2022 Ark. 219, 655 S.W.3d 303.

[8]We note that although M.C. moved to dismiss her resisting-arrest charges to the circuit court, she does not challenge the delinquency adjudications for those charges on appeal.

[9]*Segerstrom v. State*, 2024 Ark. 130, 696 S.W.3d 799.

6

understanding and whether he or she has a rational, as well as factual, understanding of the proceedings against him or her.[10] The test for competency on appeal is whether substantial evidence supports the circuit court's finding.[11] When determining whether there is substantial evidence, it is permissible to consider only the testimony that supports a finding of competency.[12]

Here, although evidence showed that M.C. suffers from bipolar disorder, Townsend Sr. testified that she is doing a lot better with her current medication and that she is doing well in school and on track to graduate. M.C. had already undergone a forensic evaluation, and there was no evidence presented to the circuit court as to why M.C. needed another evaluation. Additionally, when M.C.'s counsel was trying to decide whether to present a defense, he consulted with her. Thus, substantial evidence supports the circuit court's denial of M.C.'s request for a forensic evaluation on the day of the hearing.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Sharon Kiel*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.

---

[10]*Id.*

[11]*Id.*

[12]*Id.*